[S. F. No. 15367. In Bank.—July 31, 1935.]

NELLA GORE, Respondent, v. MARKET STREET RAILWAY COMPANY (a Corporation) et al., Appellants.

William M. Abbott, Walter H. Linforth and William M. Cannon for Appellants.

Ford & Johnson and Fletcher A. Cutler for Respondent.

PRESTON, J.—Appeal by defendants from order denying their motion for judgment notwithstanding verdict for plaintiff. Plaintiff, struck by a street car operated by defendants, brought this action to recover damages for personal injuries so sustained, and had a $7,500 jury verdict in her favor. The appeal presents the following questions: 1. Was the operator of the street car using ordinary care so that it might not injure other users of the highway? 2. Was the plaintiff guilty of contributory negligence as a matter of law? 3. If the answer be affirmative, may plaintiff then invoke the doctrine of last clear chance?

Upon review of the record we find that appellants' contention that the evidence establishes that plaintiff's injuries were caused wholly by her contributory negligence must be sustained. The evidence, without substantial conflict, shows that the accident occurred about 8 P. M. on August 25, 1929, at the intersection of Fifteenth Avenue and Fulton Street, San Francisco, in somewhat the manner next described.

Defendant company owns and operates a double-track street railway along Fulton Street, an east-west boulevard, 55 feet wide from curb to curb. In the vicinity with which we are concerned said boulevard is bounded on the south by Golden Gate Park, without intersecting crossroads, and on the north by blocks 270 feet long with intersecting numbered avenues (Seventeenth, Sixteenth, Fifteenth, etc.), 40 feet wide from curb to curb. Approaching easterly Fulton Street is upgrade from Seventeenth Avenue to Sixteenth and 4 per cent down grade from Sixteenth Avenue to Fifteenth. At each intersection is an arterial sign requiring traffic on the avenues to stop before turning into the boulevard.

At the northwest corner of Fifteenth Avenue and Fulton Street there is a street light suspended from a trolley pole. About 10 feet west of the intersection, immediately south of the double tracks along Fulton Street, is a safety station, approximately 55 feet in length, for use of persons intending to take eastbound or down-town going street cars. The street cars stop at this safety station upon signal of persons there waiting; if no passengers are waiting, the cars proceed without stopping; however, after reaching the crest of the grade at Sixteenth Avenue, they customarily decrease speed on the down grade from Sixteenth Avenue to Fifteenth.

Plaintiff, at the time of the accident, was 49 years of age, by occupation a practical nurse. For some seven years she had resided on Fifteenth Avenue about a block from Fulton Street and was accustomed to frequent use, often twice daily, of said street cars. On the evening of the accident, she left home and proceeded to the intersection, intending to board an eastbound or down-town street car. Because of said grade, she could only see the top of a car as it approached Sixteenth Avenue from Seventeenth. But thus seeing that there was a car approaching about two blocks distant, she started at a fast walk from the north side of Fulton Street, to reach the safety station on the south side, proceeding either, as she testified, from the northwest corner of Fifteenth Avenue, or, as an eye-witness testified, diagonally from the northeast corner thereof. She had tan gloves on and stated that during her entire progress, up to the time she was hit, she kept her hand up as a signal to the motorman to stop. She failed to reach the safety zone. The street car struck her as she was crossing the south, or eastbound, tracks and her body was thrown a little south of said tracks and east of the end of the safety zone. A man who was driving easterly on Fulton Street behind the street car witnessed the path of plaintiff's body and was forced to turn his car sharply to the south to avoid running over her.

It is undisputed that there were no prospective passengers waiting on the safety zone. Neither is there any evidence that the street car was traveling at an excessive speed over this portion of its route. Thus, unless the motorman saw plaintiff, there was nothing to cause him to further decrease the speed of the car or to stop at the intersection. He testified that the speed of his street car at Sixteenth Avenue was

between 20 and 25 miles an hour and that as he approached Fifteenth Avenue, down grade, he reduced the speed, as was customary, to 12 to 15 miles an hour; that the first time he saw plaintiff was when he saw an object 5 or 10 feet in front of him, just coming to the north rail of the eastbound track; that he immediately used emergency measures to stop the car, but was unable to avoid hitting this object, which he later discovered was a woman, and that he brought the car to a stop within 25 or 30 feet, in about the middle of the intersection.

We are unable to find any evidence whatsoever of negligence on the part of the motorman nor do we see any room for operation of the doctrine of last clear chance to uphold the verdict. Had the motorman seen plaintiff before she passed from the westbound to the eastbound tracks, and in time to stop the car, he still could not have foreseen that she would leave her place of safety on said westbound tracks. He had the right to assume that she would maintain her position there; her presence would have afforded no warning that she would proceed in the path of the car. The motorman was required to use only ordinary care and precaution in the management and operation of the street car to avoid inflicting injury upon persons using the street.

It is apparent that plaintiff failed to exercise any care whatsoever for her own safety. Although as she claims, it may still have been light enough, at 8 o'clock of a late August evening, for the motorman to have seen her, it is undisputed that she was fully aware at all times of the oncoming car, its position and speed. She knew that cars frequently failed to stop at the intersection. She testified that she had boarded cars at that place frequently, "twice a day mostly". Asked whether the cars customarily stopped there for her upon signal, she replied: "No, they did not stop for me always. . . . The cars would pass by many times." She further stated that around that time, in the evenings sometimes, a couple of cars would pass, even though she signalled for them. Again, that when she was on the rails of the westbound car, when she had reached that point, she noticed the eastbound street car and it "looked to be about half a block away" from there; that she was then down to the second or last rail and the car was half a block away. She stated: "When I was on the second rail, yes, sir, the last rail there,

I could see the car, because I was looking right at the car and I saw it about half a block away. I could see the lights of the car. . . . '' It will be noted that these were unusually short blocks, 270 feet long from curb to curb, or 240 feet from property line to property line. Thus a street car half a block away would have been approximately within 120 feet of plaintiff or only about 65 feet from the end of the safety zone.

It seems evident that the accident would not have occurred but for plaintiff's negligence in knowingly proceeding in the path of the oncoming car and in failing, up to practically the moment of impact, to avoid being hit, either by remaining on the westbound tracks, stepping back on them, or quickening her pace to get over the last south rail.

Respondent argues, to find support for the verdict, that the jury may have discredited the motorman's statement that he failed to see plaintiff sooner and that the jury was entitled to believe either that the motorman deliberately proceeded ahead without slackening speed or to believe that if he had been looking straight ahead, he could have and should have seen plaintiff; that, by not so looking and seeing, he was guilty of negligence which, notwithstanding contributory negligence of plaintiff, would entitle her to recover. We fail to see how such deliberate negligence on the part of the motorman could be inferred in view of the fact that if he had seen plaintiff in time to stop, he would have noted her position of safety on the westbound track and could not assume or foresee that she would negligently step into the path of the oncoming car, which she saw was not diminishing its speed.

A case similar to the instant case, in fact practically indistinguishable from it, save that plaintiff there admittedly ''ran'' in front of the car, whereas plaintiff here claims that she only ''walked fast'', is *Anderson* v. *Market St. Ry. Co.*, 116 Cal. App. 282, 285, 286 [2 Pac. (2d) 529]. In reversing a judgment for plaintiff the court there said:

'' . . . The issue of contributory negligence is ordinarily a question of fact for the jury, but there are cases in which it becomes a question of law under the undisputed facts. (Citing cases.) As was said in *Brown* v. *Pacific Elec. Ry. Co.*, *supra*, 167 Cal. 199, at page 205 [138 Pac. 1005]: 'While it is true that ordinarily the question of contributory negligence must be left to the jury, we think this is one of the

cases where the "standard of conduct required of persons under given circumstances is so obvious as to be applicable to all persons under such circumstances". . . . If Mr. Brown had taken the commonest precautions the accident would not have occurred. . . . ' In the present case respondent's own testimony showed that she did not take any precautions or exercise any care whatsoever. She was at all times aware of the approach of the car, of its speed and of its proximity. She knew that she was on the 'blind side' of the car where no passengers were admitted and knew that the car would stop only for persons waiting on the safety zone. She knew that there was nothing about the manner in which the car approached to indicate that it was stopping and, to the contrary, testified that she knew that it 'came fast the whole time'. Having this knowledge she proceeded to run directly into its path and the unfortunate accident is obviously accounted for by her great hurry to beat the oncoming car as she crossed the track. In our opinion the conclusion that her own negligence was a proximate cause, if not the sole proximate cause of her injuries, follows necessarily and irresistibly from the undisputed facts.''

The order appealed from is reversed.

Thompson, J., Shenk, J., Waste, C. J., and Seawell, J., concurred.

Rehearing denied.