[Civ. No. 15950.   Second Dist., Div. One.   Jan. 29, 1948.]

LUCCO FERRULA et al., Appellants, v. SANTA FE BUS LINES (a Corporation), Respondent.

[Civ. No. 15951.   Second Dist., Div. One.   Jan. 29, 1948.]

LESTER D. LYNCH, Appellant, v. SANTA FE BUS LINES (a Corporation), Respondent.

Samuel P. Young for Appellants.

Spray, Davis & Gould for Respondent.

BARTLETT, J. pro tem.—This is an appeal from judgments in favor of respondent in two consolidated actions for damages resulting from a collision between a bus operated by respondent and an automobile driven by the appellant Lester D. Lynch, as a result of which Lester D. Lynch was injured and three passengers in his car were killed.

The appellants Lucco Ferrula and Mary Ferrula are the parents of a minor daughter, one of the passengers who was killed. The appellant Harriet Robertson is the mother and

sole heir of Edward Robertson, age 23 years, another of the passengers who met his death in this accident.

On October 16, 1945, about 9:30 p. m., Lester D. Lynch was driving his car along San Fernando Road in the direction of Los Angeles near its intersection with Fox Street which is the boundary line between the city of Los Angeles and San Fernando. In the opposite direction respondent's bus, driven by its employe James Dailey, was traveling at a speed estimated variously to be between 20 and 30 miles per hour. At the place of the collision, San Fernando Road is a six-lane through highway 60 feet wide. The place where the accident occurred was in the approximate center of an elongated "S" curve in San Fernando Road on the Los Angeles side of Fox Street, to the right of the center line in the direction in which the bus was traveling. Lynch, who at the time was traveling about 20 miles per hour, testified that he saw the lights of the bus approaching; that both cars were proceeding in the lane nearest the center line. Then he said, "He was coming, going normally, until he got near Fox Street and I saw the lights cross the double line and I made a sudden left turn. That is the last I remember." Dailey, the bus driver, and all other witnesses testified the bus driver never crossed the center line.

The appellants urged at the trial that the bus driver violated the basic speed law, that he violated section 527 of the Vehicle Code requiring that each driver shall give to the other at least half of the main-travelled portion of a highway; and that he violated the provisions of the Vehicle Code relating to left turns at intersections. ▆ Having these theories in mind the appellants offered certain instructions the refusal of which they charge as error. One of the instructions offered was the following:

"The speed at which a vehicle travels upon a highway, considered as an isolated fact and simply in terms of so many miles an hour, is not proof either of negligence or of the exercise of ordinary care.

"Whether that rate of speed is a negligent one is a question of fact, the answer to which depends on all the surrounding circumstances.

"The basic speed law of this state is as follows:

" 'No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property.'

"A violation of this basic rule is negligence."

This instruction was refused and no instruction upon the subject embraced in it was given. There can be no contention that the offered instruction was not a correct statement of the law. Whether or not the bus driver was violating these provisions of the law under the testimony in this case was a question of fact for the jury (*Porter* v. *Signal Trucking Service,* 59 Cal.App.2d 289 [138 P.2d 753]).

There is testimony in the record that this accident took place in the center of the "S" curve of San Fernando Road referred to. That prior to entering this curve the bus driver had been traveling in the outside lane, but in taking the curve he had swung over to the inside lane. The bus driver testified that he was traveling at 20 miles an hour and that he could stop his bus within 35 to 40 feet when traveling at from 20 to 25 miles an hour. There is also testimony that appellant Lynch was 85 feet from the bus at the time he made his turn in front of it. Nevertheless the bus skidded for 75 feet after the impact and hit Lynch's car with such force as to cave in the front door of the car, break the front seat clear off, and kill three people. With these facts in the record, the refusal of the instruction was error.

■ The court gave the jury the following instruction at appellants' request:

"The California Vehicle Code, which was in full force and effect at the time and place of the accident herein, provides as follows:

" 'Section 527. PASSING VEHICLES PROCEEDING IN OPPOSITE DIRECTIONS. (a) Drivers of vehicles proceeding in opposite directions shall pass each other to the right, . . . each driver shall give to the other at least one-half of the main traveled portion of the roadway whenever possible.' "

Both appellants and respondent requested instructions that a violation of a section of the Motor Vehicle Act constituted negligence *per se* or negligence as a matter of law. The court refused the requests of both parties, although the requested instructions were correct (*Satterlee* v. *Orange Glenn School Dist.,* 29 Cal.2d 581 [177 P.2d 279]). Based upon the testimony of the appellant Lynch that he saw the lights of the bus cross the center line of San Fernando Road as it neared Fox Street, it was one of appellants' contentions that respondent's conduct had violated the provisions of this section of the Vehicle Code and constituted negligence. The court evidently

considered this evidence sufficient to justify the giving of the instruction regarding the provisions of section 527 of the Vehicle Code, but by refusing to give these instructions requested by both parties the jury was left without any guidance as to what effect a violation of this section had. "Its duty was to give instructions expounding the law upon every reasonable theory of the case finding support in the evidence." (*Bickford* v. *Pacific Elec. Ry. Co.*, 120 Cal.App. 542 [8 P.2d 186].)

It is to be noted that at the conclusion of the appellants' case, a motion for a nonsuit was made upon the ground, among others, that respondent was guilty of no negligence and that this motion was denied. However, by its failure to give the instructions in reference to the effect of a violation of the Vehicle Code and also by its refusal to instruct as to the basic speed law at all, the court deprived the appellants of any theory upon which a finding of defendant's negligence could be predicated.

Appellants complain of the court's refusal of their offered instructions in reference to the lack of evidence as to any contributory negligence on the part of Marianna Ferrula and Edward Robertson who were killed in the accident and who were passengers in the car. The record shows that this phase of the matter was covered by the court's instruction to the effect that it was presumed that the decedents took ordinary care of their own concerns, that this in itself was evidence and should be accepted as a proven fact unless overcome by satisfactory evidence and that no negligence on the part of Lynch could be imputed to them.

Appellants also complain of the refusal of the court to instruct the jury regarding three sections of the Vehicle Code relating to the subject of left turns. Suffice it to say that there is no substantial evidence in the record that made these sections applicable to the case.

Respondent offered an instruction which was given by the court and reads as follows:

"If and when you should find that it was within the power of a party to produce stronger and more satisfactory evidence than that which was offered on a material point, you should view with distrust any weaker and less satisfactory evidence actually offered by him (or her) on that point."

The reason for appellants' claim that this instruction prejudiced their case is stated by them in the following language:

"Counsel for respondent was guilty of misconduct in offering, and the court committed prejudicial error in allowing, hearsay and improper evidence that the operator's license of plaintiff Lynch was revoked after the accident because of reported blackouts."

We cannot agree with appellants' contention in this regard. Counsel for the respondent on the cross-examination of the appellant Lynch asked him if his driver's license was revoked after the accident due to the fact that he had had malaria and had had several recurrences of this disease and had suffered blackouts. The court sustained an objection to this question. Lynch was then asked if he suffered from any sort of an ailment that caused him to have blackouts and he said that he had not. He was then asked if he had a driver's license, and he replied that he did have at that time. In answer to the question, "Why was it revoked? A. It was revoked ——. Q. If you know? A. It was revoked on supposedly blackouts."

The court then stated the objection was made after the answer was in and overruled it.

Regardless of whether or not the objection was made before or after the answer was given, at that stage of the proceedings that was all of the evidence there was upon the subject. Lynch was then examined by counsel for appellants on redirect examination and was questioned at length in regard to blackouts he had had as far back as in 1939, all of this in spite of a suggestion made by the court, outside of the hearing of the jury, that this line of examination on the part of appellants was just magnifying the situation.

Also, during this redirect examination he was interrogated regarding certain statements he had made to the police in the hospital at Glendale regarding this particular subject.

Following this redirect examination concerning his statements to the police, Mr. Lynch was questioned further as follows:

"Q. Mr. Lynch, what was the occasion for this conversation that you had with the officer in Glendale? A. Well, they sent me a letter and told me to report in to Glendale. It said it was a matter as to whether I was going to keep my license or whether my license was going to be taken away from me."

After the answer was in, an objection was made to the question, which was overruled by the court.

In view of the questions asked of Lynch by his own counsel, the question referred to was a natural one and was proper cross-examination.

Following this a police officer was called and asked if he had a notice of revocation of Lynch's license which constituted a part of his files. Appellants very properly objected to this question and the objection was sustained.

The appellants seem to be confused as to the state of the record. They say in their opening brief, "As already pointed out, Lynch testified to all events up to his making the turn over the center line. (Even his statement to the bus company investigator at the hospital while he was still 'foggy because he was pretty sick' told of remembering making the turn to avoid the collision.) Counsel for respondent, knowing he could not introduce the above record in evidence, questioned Lynch concerning this matter."

In appellants' closing brief we find the following, "Respondent has quoted portions of the statement of Lynch given at the time he was in the hospital a few days after he was injured which show that at that time he was confused concerning the events leading up to the accident; but confused as he was he there also stated, as he did at the trial, that *the last thing he remembered was that he turned left to avoid a collision with the bus.*" (Italics supplied by appellants.)

These allegations on the part of appellants are not correct. The statement which he was questioned about was introduced in evidence by respondent and read to the jury without any objection on the part of the appellants. This report, which was made a short time after the accident, is replete with utterances at variance with his testimony on the witness stand at the trial and this is evidenced by the very portions of the statement to which appellants refer. After saying, "I might have swung over a little to the left, but I don't remember definitely," the following occurred:

"Q. Do you remember when you first saw the bus coming toward you? A. The only thing I remember—the first and last thing I remember was this bus right on top of me.

"Q. Then the crash happened? A. Yes.

"Q. Do you remember where the accident happened, that is, on which side of the road? A. No, I don't.

"Q. You don't remember pulling over to the left just before the crash? A. No, I don't—all I remember is just seeing this bus, just a flash of it, that is all, and then the crash.

"Q. Did you recognize it as a bus? A. I never knew until the next day that it was a bus.

.    .    .    .    .    .    .    .

"Q. You cannot tell us on what side of the double line

you were when the crash occurred? A. No, I cannot— I know I came right straight down San Fernando Road—I am going on what I heard—I don't remember anything about it at all myself.

"Q. What you have been telling me is what somebody told you; is that right? A. Well, yes—I remember the bus, and that is all, and then there was a crash.

"Q. You don't remember the bus making a turn yourself? A. No.

"Q. What was the last thing you remember before the crash? A. Seeing the bus—I was under the impression there was another bus in front of me, going in the same direction I was.

"Q. You were under the impression there was another bus ahead of you and you were trying to pass it? A. I guess I thought there was another bus ahead of me, and I started to swing to go around him.

"Q. And then the next thing you remember is the crash? A. Yes, that will be my picture of it until my dying day—I thought this bus had just pulled out of the bus station there."

There was nothing in the conduct of respondent's counsel which justifies any charge of misconduct on his part.

To the giving of the instructions, the appellants correctly say, "There was no duty on appellants to bring in the officers who made the investigation with reference to the revoked operator's license. If defendant desired to show that Mr. Lynch's operator's license was revoked because he had a blackout at the time of the accident which caused the accident he had full opportunity to do so by proper means and process." This being true, the giving of the instructions could not have prejudiced appellants' case. The burden to show that Lynch's license was revoked because he had had a blackout at the time of the accident was on the respondent.

The respondent strenuously urges that assuming that there may have been error in the trial of the case, such error could not have produced a miscarriage of justice, and therefore that in the light of the provisions of section 4½ of article VI of our state Constitution, the judgments must be affirmed, citing *Hastings* v. *Serleto,* 61 Cal.App.2d 672 [143 P.2d 956].

There are two judgments to be considered in these consolidated actions. In the case of *Lynch* v. *Santa Fe Bus Lines,* a careful examination of the record discloses that regardless

of any negligence on the part of respondent there is such an overwhelming evidence of the contributory negligence of Lynch that none of the errors complained of could have contributed to a miscarriage of justice.

There is an entirely different situation in the case of *Ferrula* v. *Santa Fe Bus Lines*. Lynch's negligence could not be imputed to those who were merely passengers in the car and who were killed in the accident. The only evidence in the record regarding these unfortunate persons is that just prior to the accident they were alive and that their dead bodies were taken out of the car after the accident. The refusal of all instructions on appellants' theory of respondent's negligence undoubtedly prejudiced the case of these appellants. As stated in *Herbert* v. *Lankershim*, 9 Cal.2d 409 at page 476 [71 P.2d 220], ''In such cases the provisions of article VI, section 4½ of the Constitution cannot be invoked in aid of the affirmance of the judgment, unless it can be said that the justice of the cause preponderated so heavily on the side of the prevailing party that none of such errors did or could have contributed to or resulted in a miscarriage of justice.'' In the instant case no such statement can be made.

The judgment in *Lynch* v. *Santa Fe Bus Lines,* Civ. No. 15951, is affirmed. The judgment in *Lucco Ferrula, et al.* v. *Santa Fe Bus Lines,* Civ. No. 15950, is reversed.

Doran, Acting P. J., and White, J., concurred.