[Civ. No. 15954. Second Dist., Div. One. Apr. 12, 1948.]

MARGARET BALASCO, Appellant, v. RALPH OSCAR CHICK et al., Respondents.

Melvin Simon and Alexander Oster for Appellant.

Forrest A. Betts and Crider, Runkle & Tilson for Respondents.

WHITE, J.—Action for damages on account of alleged negligence. Judgment for defendants, from which plaintiff appeals.

At the trial, plaintiff testified that on the night of March 1, 1946, at about 10 p. m., she was standing in a streetcar loading zone at the corner of Hyde Park and Crenshaw Boulevards in the city of Los Angeles, waiting to board an

oncoming northbound streetcar. That she observed the street-car approaching when it was about one block and a half from her position in the loading zone. That she first saw the automobile which struck her as it passed the streetcar; that the automobile turned onto the tracks in front of the street-car, and when it was about 75 feet from her it swerved to the right "heading straight for the safety zone, heading straight for me." That she then "started to scream, put up my right arm, and I started to scream. . . . And the first thing I know I got hit, and that is all I remember." Plaintiff estimated the speed of the approaching automobile at from 50 to 55 miles per hour. She also testified that the automobile which struck her "only had one light, a very dim light."

Russell D. Derifield, motorman of the streetcar for which plaintiff was waiting, testified that on the night in question he was proceeding north and when he was a block and a half south of the intersection of Hyde Park and Crenshaw Boulevards, defendant Ralph Oscar Chick's automobile passed the streetcar at an estimated speed of at least 50 miles per hour; that the vehicle then turned onto the car tracks and continued north on the easterly rail of the northbound track; that when within 10 or 15 feet of the safety zone, it swerved to the easterly side of the street and struck the button of the safety zone nearest the east rail; that during all this time there was a woman standing in the south end of the safety zone. That after striking the button the auto-mobile proceeded through the safety zone approximately to the property line of Hyde Park and Crenshaw Boulevards. This witness saw the automobile stop, and when he arrived at the scene of the accident he observed plaintiff "on the ground in front of the car." There was other testimony given by this witness from which the jury could infer that the streetcar had gained some 70 feet on defendant Chick's auto-mobile, while the streetcar was going approximately 20 miles an hour and had slowed down to 15 or 16 miles an hour pre-paratory to stopping, though he estimated the automobile was traveling at a speed of 50 miles per hour.

George Gorciah testified that he was with his wife at the corner when the accident happened. That his attention was attracted to the accident by the application of brakes; that the vehicle was coming directly for a woman in the loading zone; that "the woman screamed, had her hands in the air, and the car hit the button and carried her, I think her coat caught under the car, and drug her up."

Henry Mack, a police officer attached to the Traffic Investigation Bureau, testified that he arrived at the scene of the accident at approximately 10:05 p. m. He observed an automobile facing north in the crosswalk on the east side of Crenshaw Boulevard, and a woman lying under the right side of the car. He observed skid marks which had a slight arch to the northeast, a slight arch to the right, and a curve to the left. The skid marks started just a few feet from the rail. The skid marks on the left side went over the outside corner of the button on the southeast end of the safety zone. The only point in which the left hand skid marks came near any portion of the safety zone was at the point at which the tire hit the button. That there were three "breaks" in the skid marks; that there was a 1-foot break in the west skid mark and a 3-foot break in the east skid mark. This witness further testified that after the accident there was water in the street immediately to the north of the 3-foot break in the tire mark. That aside from this one spot of water, the street was clear, immediately after the accident. The witness further testified that he asked the defendant Ralph Oscar Chick if those were his skid marks, to which the defendant replied, "Yes." That the overall length leading up to the rear wheels of the vehicle was 115 feet; that the street was posted with 25-mile speed limit signs.

Defendant Ralph Oscar Chick, driver of the automobile in question, was called by plaintiff under section 2055 of the Code of Civil Procedure. He testified he was driving the car with the consent of his codefendant to whom it was registered. That 15 days prior to the accident the brakes on the car had been checked; that on the night in question he was proceeding home, driving at approximately 30 miles per hour. He testified that as he drove north, the weather was foggy up to approximately three blocks south of the intersection of Crenshaw and Hyde Park Boulevards, at which point the fog had lifted, but that there was still a "haze." That with the aid of his headlights he could see approximately a block, or 200 feet, ahead. That he could see the reflection of his lights on the east curb about 75 to 100 feet ahead of him. That as he proceeded north on Crenshaw Boulevard he was traveling approximately in the center lane, traveling over the eastern rail of the northbound track; that he was in that position when he reached the beginning of the streetcar tracks on Crenshaw Boulevard and so continued north on Crenshaw. He did not observe any vehicle in the front or

in the rear of him at any time after he reached the point where the streetcar tracks entered Crenshaw Boulevard.

He further testified that when he first observed the plaintiff he was some 75 feet away from her, that she was headed west, apparently going toward the safety loading zone. That she was about 10 or 15 feet north of the southerly button of the zone as she approached the zone. That when he first observed the plaintiff he applied his brakes and changed the direction of his vehicle to the right, from a northerly direction to a northeasterly direction. That when his automobile was about 20 feet from the south button of the south end of the loading zone the plaintiff suddenly turned about and ran from the loading zone back into the street. That he immediately applied his foot brake and his hand brake, and turned slightly to his left in an effort to avoid striking the plaintiff. That as he turned, his left wheel hit the southeast edge of the button at the southeast corner of the safety zone and that the wheels "bounded somewhat" after hitting the button. That the only time any part of his automobile was in contact with any portion of the loading zone was when the wheel hit the corner of the button. That the collision between plaintiff and the automobile of the witness occurred approximately a "second" thereafter at a point in the highway between the loading zone and the curb.

Ronald S. Siemund, called as a witness for the defendant, testified that he was driving on Crenshaw Boulevard near Hyde Park Boulevard at the time of the accident. That the automobile of the defendant was in the center of the area from the curb to the safety zone at the time of the collision and that it was also about the center of the safety zone lengthwise. That just before the accident he saw a shadow which appeared to be moving, but that he did not see the plaintiff in the safety zone.

The wife of the last-mentioned witness testified that at the time of the collision defendant's automobile was between the safety zone and the curb. That plaintiff was midway between the safety zone and the curb. This witness also testified that there was nothing "unusual" about the speed of defendant's vehicle.

Fred A. Webb, who was standing near the southwest corner of Hyde Park and Crenshaw Boulevards at the time of the accident testified that when he first observed the automobile it was several car lengths south of the south end of the safety zone, between the easterly curb and the white

line that runs southwesterly from the southeast corner of the safety zone diagonally to within a few feet of the track. That as the automobile moved in a northerly direction it seemed to go first toward the track, and then back toward the curb. That he saw an object between the curb and the streetcar tracks. That the vehicle was south of the cross-walk, between the track and the curb when the witness first heard the application of brakes. That before he heard it strike the object in the street, he heard it hit something else. That prior to the accident he observed that there were two lights on the automobile.

Appellant first contends that the evidence is insufficient, as a matter of law, to support the judgment.

When a judgment is challenged on the ground that the record is barren of any substantial evidence to support the same, it is well settled and firmly established in our law, as was stated in *Arundel* v. *Turk,* 16 Cal.App.2d 293, 295 [60 P.2d 486], that ''[w]hen a judgment is attacked as being unsupported by the evidence, the power of the appellate court in passing on this question begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the verdict rendered by the jury; and on appeal from a judgment for defendant in an action for damages for negligence, all conflicts in the evidence must be resolved in favor of the defendant, and all legitimate and reasonable inferences indulged in to uphold the judgment, if possible; and when two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the jury. (*Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427 [45 P.2d 183].)''

The case at bar presents substantial evidence which, if believed by the jury, tended to establish that defendant's automobile was traveling at a reasonable rate of speed at the time the driver thereof saw appellant moving from the curb toward the safety zone, and that his move to pass to the right of the zone and thus pass in back of her was the exercise of due care; that appellant turned suddenly again toward the curb; that the vehicle driver's efforts to avoid striking her were the acts of a reasonable and prudent person; that the proximate cause of the accident was the negligence of appellant in attempting to return to the curb.

An appellate tribunal does not sit as a jury to determine issues of fact, the credibility of witnesses or the weight

to be attached to their testimony. It is only when evidence upon its face may justifiably be held to be insufficient to support the ultimate issues involved that appellate courts are authorized to review the evidence, because, in such a case, it is not a review of a question of fact but purely one of law. The testimony in the case at bar, upon which the jury relied, does not admit of such stricture.

■ Appellant, however, contends that the testimony supporting the judgment came primarily, if not altogether, from the defendant driver when he was called as a witness under section 2055 of the Code of Civil Procedure. That because such testimony was not binding upon appellant, there is no conflict in the testimony as given by her and the witnesses sworn in her behalf. That, therefore the evidence, as a matter of law, is insufficient to support the judgment. Undoubtedly, it is true that any party to a lawsuit may call an adverse witness without being bound by the testimony of that witness, but "[t]his testimony is, of course, evidence in the case and may be considered in determining the issues of the case upon the trial or final hearing by the court, or if the case is before a jury, by the jury." (*Smellie* v. *Southern Pacific Co.*, 212 Cal. 540, 559 [299 P. 529].) The jury in the instant case was therefore justified in considering the evidence of the defendant called under section 2055 of the Code of Civil Procedure, as merely creating a conflict with testimony in contradiction thereof, to pass upon the weight of such evidence, and if believed by them, to predicate a verdict thereon.

■ Appellant next complains of the ruling of the trial court admitting into evidence a photostatic copy of a map prepared by Police Officer Mack as part of his official report covering his investigation of the accident. Objection was made to the introduction of the map on the ground that it was hearsay. The objection was overruled. The ruling was correct. The map was separated from the officer's report and was offered to show various material points observed and recorded by the witness on the evening of the accident. In other words, the physical facts as he observed them upon his arrival, such as the course of the skid marks, where they touched the safety zone button, where the automobile and appellant were when the officer arrived at the scene of the accident, where the water mark was from the thermos bottle admittedly carried by appellant. We perceive no prejudice to appellant because of the admission of the map in evidence.

It was no more than an illustration. The witness, being under cross-examination at the time the map was introduced, could have been required to make similar marks and indications on the map then in evidence. When a map is introduced as in the case at bar, it is not used as evidence—it does not prove or tend to prove, in the sense of evidence, any fact; it simply contains figures drawn to suggest to the minds of the jurors the location of and the relations between objects about which the witness is testifying. ▪ In other words, it is merely illustrative of the testimony given by the witness. As such it is receivable by the jury and may be taken with them upon their retirement. The diagram here in question simply illustrated the relation between the objects about which the witness was testifying, as he saw them after the accident occurred, and served to make his testimony more understandable to the jury.

▪ Finally, appellant urges that the court erred in instructing the jury on the doctrine of contributory negligence. Appellant's contention in this regard is grounded on the claim that she was not bound by the testimony of defendant driver given pursuant to section 2055 of the Code of Civil Procedure, and that therefore, there was no evidence in the record to justify the court in giving instructions on the law of contributory negligence.

In view of what we have heretofore said concerning the right of the jury to consider such testimony in determining the issues of the case, it follows that the defense of contributory negligence having been pleaded and made an issue at the trial, it was the duty of the court to give proper instructions relative to the law applicable thereto (19 Cal.Jur., § 159, p. 765; *Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270 [201 P. 599]; *Mora* v. *Favilla*, 186 Cal. 199 [199 P. 17]; *Brown* v. *Yocum*, 113 Cal.App. 621 [298 P. 845]).

The testimony given by defendant driver creating as it did a conflict as to the position of the appellant at the time she was struck and as to her conduct and actions just prior to and at the time of the accident, it was for the jury to determine, under proper instructions from the court, whether or not she was guilty of negligence which proximately contributed to her injuries. No claim is made that the instructions given were not a correct exposition of the doctrine of contributory negligence.

In support of her last-mentioned argument, appellant cites us to three cases, but each is easily distinguishable from

the case now engaging our attention. The case first cited is *Shippy* v. *Peninsula Rapid Transit Co.*, 197 Cal. 290 [240 P. 785], but in that case defendants by their answer presented no issue of contributory negligence, nor was the case tried upon the theory that plaintiff's contributory negligence was an issue therein. In *Evarts* v. *Santa Barbara etc. Ry. Co.*, 3 Cal.App. 712 [86 P. 830], the defendant submitted no evidence whatever and the cause was tried upon the testimony of the plaintiff's witnesses alone. In the third case of *Van Horn* v. *Pacific Refining etc. Co.*, 27 Cal.App. 105 [148 P. 951], there was no evidence adduced on the issue of contributory negligence sufficient to warrant the giving of requested instructions on that issue, and the defendant had not presented the issue of contributory negligence in its answer.

We find no error in the record. The judgment is therefore affirmed.

York, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 10, 1948.