[S. F. No. 18701. In Bank. Apr. 9, 1953.]

LAURA E. DANIELS et al., Appellants, v. CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Tobriner & Lazarus and Leland J. Lazarus for Appellants.

Dion R. Holm, City Attorney, and George E. Baglin, Deputy City Attorney, for Respondents.

SPENCE, J.—Plaintiffs sought to recover for personal injuries and property damage sustained as the result of an intersection collision between an automobile driven by plaintiff Laura E. Daniels and a municipal bus operated by defendant Myron Urdahl. The verdict was for defendants. From the judgment thereupon entered and an order denying their motion for a new trial, plaintiffs have appealed. As the latter order is nonappealable (Code Civ. Proc., § 963; 20 Cal.Jur. 213), the appeal therefrom must be dismissed.

The jury was given the customary instructions on the issues of negligence and contributory negligence. However, the court refused to instruct on the doctrine of last clear chance. The propriety of such refusal is the principal point in dispute. The form of the proposed instruction is not in question. (B.A.J.I. 205, p. 310; *Root* v. *Pacific Greyhound Lines,* 84 Cal.App.2d 135, 137 [190 P.2d 48]; *Alberding* v. *Pritchard,* 97 Cal.App.2d 443, 444-445 [217 P.2d 1012].) Viewing the evidence in the light most favorable to the application of the doctrine and indulging every reasonable inference in support thereof (*Bonebrake* v. *McCormick,* 35 Cal. 2d 16, 19 [215 P.2d 728]; *Selinsky* v. *Olsen,* 38 Cal.2d 102, 103 [237 P.2d 645]; *Hopkins* v. *Carter,* 109 Cal.App.2d 912, 913 [241 P.2d 1063]), we have concluded that plaintiffs were entitled to the requested instruction.

The accident occurred on March 5, 1949, about 5:30 p. m. at the intersection of Alemany Boulevard and Congdon Street

in San Francisco. Alemany Boulevard, a six-lane signposted "through highway" (Veh. Code, §§ 82.5, 552, 577), runs in a general easterly-westerly direction. It is quite winding, and long concrete "islands" divide the boulevard into two three-lane roadways for opposite travel. Each roadway is 38 feet wide, with the outer lane 17 feet 6 inches wide, the middle lane 10 feet wide, and the inner lane 10 feet 6 inches wide. Congdon Street runs north-south and slopes a little downhill as it ends at the boulevard. Mrs. Daniels was driving her automobile in a northerly direction along Congdon Street and approaching the boulevard intersection, which was protected by an arterial stop sign. She intended to cross the boulevard's eastbound lanes and turn to her left onto the westbound roadway. The view of eastbound boulevard traffic approaching from her left was partially obscured by a large billboard on the southwest corner of the intersection and the curving line of the boulevard. At that time defendants' gasoline-propelled bus was traveling easterly in the boulevard's middle lane, having just made a stop at the Mission Street viaduct, which crosses the boulevard 750 feet west of Congdon Street. The driver, defendant Urdahl, then had a fleeting view of plaintiffs' automobile as it proceeded down Congdon Street and passed an opening between the corner billboard and the last house on the street.

Meanwhile Mrs. Daniels drove slowly into the boulevard's eastbound roadway and when defendant Urdahl next saw it, it had stopped momentarily in the middle lane some 180 to 200 feet in front of the bus. At that point Mrs. Daniels testified that she first saw the approaching bus, which she estimated to be traveling at a speed between 50 and 60 miles per hour. The bus driver testified to this sequence of events as he saw plaintiffs' automobile ahead on the boulevard: that he was then proceeding at the rate of 35 miles per hour; that he immediately applied his brakes for about 30 or 40 feet, slackening his speed to 15 or 20 miles an hour; that he then released the brakes, accelerated the bus and steered toward the inside lane in an effort to pass in front of plaintiffs' automobile; and that finally, when a collision seemed inevitable, he again applied his brakes. Mrs. Daniels testified that upon seeing the bus to the left bearing down on her as she was driving about 5 miles an hour, she accelerated her speed in an attempt to complete her crossing of the boulevard's eastbound roadway and avert a collision. However, the left front of the bus struck the left rear of her automo-

bile just forward of its rear bumper, and spun it around so that it came to rest in the boulevard's three-lane roadway for westbound traffic. The last braking of the bus left 72 feet of skid marks to the point of collision, and there were 24 feet of "brush" marks made by the tires of plaintiffs' automobile while it was being pushed along the pavement. Mrs. Daniels was thrown from her automobile by the impact and injured. Mrs. Smith, who was riding beside her, was less seriously hurt.

■ Whether or not the doctrine of last clear chance applies in a particular case depends entirely upon the existence or nonexistence of the elements necessary to bring it into play. Such question is controlled by factual circumstances and must ordinarily be resolved by the fact-finder. (*Girdner* v. *Union Oil Co.*, 216 Cal. 197, 199 [13 P.2d 915]; *Hopkins* v. *Carter, supra,* 109 Cal.App.2d 912, 915.) ■ An instruction stating the doctrine is proper when there is evidence showing: "(1) That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; (2) that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation; and (3) has the last clear chance to avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure." (*Girdner* v. *Union Oil Co., supra,* p. 202; also *Selinsky* v. *Olsen, supra,* 38 Cal.2d 102, 104; *Peterson* v. *Burkhalter,* 38 Cal.2d 107, 109-110 [237 P.2d 977].)

■ The first element is not lacking under the evidence—that plaintiff Laura Daniels by reason of her own negligence found herself in a position of danger from which she could not escape by the exercise of ordinary care. While there is a conflict as to whether plaintiffs' automobile stopped at the arterial stop sign before entering the boulevard, the defense witnesses agreed that Mrs. Daniels did not make the required stop but merely "slowed down" her automobile as she approached the intersection, and that she came to a complete stop only as she was crossing the boulevard's middle lane for eastbound traffic. At that point she first became aware

of defendants' bus as it was traveling toward her in the center eastbound lane, and it was then that she accelerated her automobile in an effort to escape from its path.

Nor is the evidence lacking in support of the second element, upon defendants' claim that there is no showing that Urdahl, the bus driver, was aware of Mrs. Daniels' perilous situation or knew that she could not escape therefrom. Urdahl testified that he first saw plaintiffs' automobile in the brief interval when it passed between the corner billboard and the last house on Congdon Street, and next when it proceeded into the boulevard. He kept his eyes on it and saw it "slowing up" until it came to a complete stop directly in his path in the boulevard's center lane. ■ He could not then know what was the cause for the retardation of plaintiffs' automobile as it rolled slowly into his lane of travel, and whether or not such procedure was sufficient to alert a reasonable man was a factual consideration for the jury. ■ As stated in *Cady* v. *Sanford*, 57 Cal.App. 218, 226 [207 P. 45]: "It was not necessary that appellant should actually know that an accident was inevitable if he failed to exercise care. It is enough if the circumstances of which he had knowledge were such as to convey to the mind of a reasonably prudent man a question as to whether respondent would be able to escape a collision." (*Peterson* v. *Burkhalter, supra,* 38 Cal. 2d 107, 111; see, also, *Jones* v. *Yuma Motor F. Terminal Co.*, 45 Cal.App.2d 497, 501-502 [114 P.2d 438]; *Alberding* v. *Pritchard, supra,* 97 Cal.App.2d 443, 445.)

■ Defendants argue that plaintiffs' automobile was not in a "position of danger" until it "jumped forward" from a standing position in the middle lane into the path of the bus as Urdahl veered to the inside lane in an attempt to avoid a collision. But such argument makes no allowance for Urdahl's admitted awareness of plaintiffs' automobile before it even stopped and while he saw it reducing its speed as it came into his path. From this aspect of the evidence it becomes unnecessary to consider decisions upon which defendants rely to the effect that the last clear chance doctrine cannot apply until a position from which the plaintiff cannot escape danger has been reached. (*Young* v. *Southern Pac. Co.*, 189 Cal. 746, 753 [210 P. 259]; *Rodabaugh* v. *Tekus*, 39 Cal.2d 290, 294 [246 P.2d 663].) It would be a disregard of the realities of the situation to hold that under no view of the record could it be said that Urdahl's observation of the slackening speed of plaintiffs' automobile until it finally

came to rest in his lane of travel on the 55-mile per hour highway might not reasonably constitute sufficient warning of the imminently perilous position created in front of him. Such consideration distinguishes cases where there was no evidence that would sustain a finding of knowledge by defendant of the plaintiff's danger. (*Johnson* v. *Southwestern Eng. Co.*, 41 Cal.App.2d 623, 628 [107 P.2d 417].)

Likewise the record is not lacking in support of the third element of the doctrine bearing on Urdahl's possession of the last clear chance to avoid the collision through the exercise of ordinary care. Both Mrs. Daniels and Mrs. Smith testified that when they *first* saw defendants' bus approaching in the boulevard's middle lane, it was about 200 feet to their left. Mrs. Daniels estimated its speed at between 50 and 60 miles per hour. Urdahl testified that he was then traveling about 35 miles per hour and that he saw plaintiffs' automobile at the stated distance in front of him "slowing down" to a "complete stop," at which time he gave his bus 30 or 40 feet of "pretty heavy . . . braking" so as to reduce his speed to about 15 or 20 miles per hour. Then he put his foot on the gas throttle and when plaintiffs' automobile was still some 50 feet distant, he turned his bus toward the inner lane in an effort to pass in front of it but instead its left rear end was caught by the bus. Defendants argue that Mrs. Daniels admittedly entering into the boulevard at the slow rate of 5 miles per hour, rather than Urdahl driving the rapidly moving bus, had the better chance to avoid the accident; that traveling at 5 miles per hour, she estimated that she could have stopped within one foot, so that until she reached that distance from the projected path of the bus she was only *"approaching* but . . . not actually *in* a position of danger" (*Dalley* v. *Williams,* 73 Cal.App.2d 427, 435 [166 P.2d 595]); that having come to a stop in the boulevard's middle lane, she could have remained there in a "place of safety" until defendants' bus passed in front of her automobile via the inner lane (*Gore* v. *Market Street Ry. Co.*, 4 Cal.2d 154, 157 [48 P.2d 2]); or she could have accelerated the speed of her automobile sufficiently to have cleared the path of the bus instead of being hit at the left rear bumper (*cf. Young* v. *Southern Pac. Co.*, 182 Cal. 369, 380 [190 P. 36]). Defendants further argue that having come to a stop, Mrs. Daniels, to all appearances, was yielding the right of way to Urdahl and inviting him to swing to the left or inner lane in front of her; and that as he accordingly changed his course, he could not anticipate that she would

create a second emergency by "jumping" her automobile ahead into the inner lane, when it was not possible for the bus to stop in time to avoid a collision. (*Gimeno* v. *Martin*, 64 Cal.App. 154, 157 [220 P. 1076].) To this point defendants cite Vehicle Code, section 543, which provides: "No person shall start a vehicle stopped . . . on a highway . . . unless and until such movement can be made with reasonable safety." Plaintiffs, on the other hand, contend that their automobile was not in a "place of safety" standing in the boulevard's middle lane with defendants' bus 200 feet to the left and continuing to travel directly ahead toward plaintiffs' automobile without deviation; that Urdahl's partial braking so as to reduce the speed of the bus to 15 or 20 miles per hour might reasonably be construed as an invitation for Mrs. Daniels to accelerate her automobile forward and escape from the perilous position in the center lane, and that without warning or signal of any kind to indicate his intent to change his course, Urdahl stepped on the accelerator of the bus to swing into the inner lane as plaintiffs' automobile was but 50 feet ahead, and the two vehicles collided.

■ In the light of these opposing factual considerations, it was for the jury to determine whether Urdahl had a last clear chance to avoid the accident by exercising ordinary care. (*Root* v. *Pacific Greyhound Lines, supra,* 84 Cal.App.2d 135, 137; *Bragg* v. *Smith,* 87 Cal.App.2d 11, 14 [195 P.2d 546]; *Hopkins* v. *Carter, supra,* 109 Cal.App.2d 912, 916.) There is no showing in the record that the operation of either vehicle was hindered by the presence of other automobiles in the immediate vicinity. The fact that it could be inferred from the evidence that Urdahl should have foreseen that Mrs. Daniels might proceed forward in response to his slowing down his bus in the middle lane distinguishes such cases as *McHugh* v. *Market St. Ry. Co.,* 29 Cal.App.2d 737 [85 P.2d 467], and *Jones* v. *Heinrich,* 49 Cal.App.2d 702 [122 P.2d 304], relied on by defendants. Likewise not in point are cases involving collisions between two fast-moving vehicles at a street intersection (*Poncino* v. *Reid-Murdock & Co.,* 136 Cal. App. 223, 232 [28 P.2d 932]; *Dalley* v. *Williams, supra,* 73 Cal.App.2d 427, 436; *Allin* v. *Snavely,* 100 Cal.App.2d 411, 415 [224 P.2d 113]) or between a fast-moving vehicle and a train at a railroad crossing (*Johnson* v. *Sacramento Northern Ry.,* 54 Cal.App.2d 528, 532 [129 P.2d 503]) where the act creating the peril occurs practically simultaneously with the happening of the accident and in which neither party may be

said to have had thereafter a last clear chance to avoid the consequences. (*Rodabaugh* v. *Tekus, supra,* 39 Cal.2d 290, 294-295.) The relative time, speed and distance factors in the cases where the evidence was held insufficient as a matter of law to permit the application of the doctrine were quite different from those before us.

 As the present record has been here reviewed, it cannot be said as a matter of law that the evidence was insufficient to justify the application of the last clear chance doctrine. Defendants submit that even though the court erroneously refused to instruct on the last clear chance doctrine, nevertheless no prejudice resulted to plaintiffs because (1) the doctrine was covered by other instructions given by the court and (2) the general verdict of the jury imports findings in favor of defendants on all material issues so as to preclude plaintiffs from raising an objection based on that theory of recovery. Neither point is well taken.

 The instructions cited by defendants in nowise purported to include the elements of the last clear chance doctrine. Rather they were directed only to the duty of the bus driver to "use reasonable prudence in analyzing the . . . situation" confronting him so as to avoid colliding with plaintiffs' automobile. Moreover, the court in its other instructions plainly refuted any application of the last clear chance doctrine by charging the jury that any negligence on the part of either Mrs. Daniels or her guest, Mrs. Smith, would bar a recovery, though a necessary tenet of the doctrine is the presence of the plaintiff's negligence. (*Girdner* v. *Union Oil Co., supra,* 216 Cal. 197, 201-204; *Selinsky* v. *Olsen, supra,* 38 Cal.2d 102, 105.) It is the duty of the court to instruct on every theory of the case finding support in the evidence. (*Emery* v. *Los Angeles Ry. Corp.,* 61 Cal.App.2d 455, 462-463 [143 P.2d 112]; *Ferrula* v. *Santa Fe Bus Lines,* 83 Cal.App.2d 416, 420 [189 P.2d 294]; *Stickel* v. *Durfee,* 88 Cal.App.2d 402, 406-407 [199 P.2d 16].) The ordinary rules on appeal sustaining a general verdict which the evidence on one of several issues upholds (2 Cal.Jur., § 612, pp. 1028-1029; 24 Cal.Jur., § 134, p. 885) has no application here where plaintiffs' theory of recovery was not even presented to the jury as an issue affecting their right of recovery. (*Bonebrake* v. *McCormick, supra,* 35 Cal. 16, 19; *Selinsky* v. *Olsen, supra,* 38 Cal.2d 102, 103.) In determining, from a consideration of the entire record, whether the error prejudiced plaintiffs' rights (Const., art. VI, § 4½), the rule

is no different from that applicable in a criminal case and stated as follows: "If it cannot be said that, in the absence of the error complained of, a different verdict would have been improbable, the erroneous ruling constitutes a miscarriage of justice within the meaning of the constitutional provision." (*People* v. *Newson,* 37 Cal.2d 34, 45 [230 P.2d 618] ; see, also, *People* v. *Hamilton,* 33 Cal.2d 45, 51 [198 P.2d 873].) It so appears here.

Certain other points raised by plaintiffs with regard to the instructions will be briefly discussed.

 The first point is plaintiffs' attack upon the court's charge that as a matter of law the prima facie speed limit for defendants at the intersection in question was 55 miles per hour, and that accordingly Mrs. Daniels, upon driving into the boulevard, should exercise an amount of care commensurate with such travel conditions. Plaintiffs argue that the jury was thereby misinformed as to the authorized prima facie speed limit and that whether the area was a residence district with a 25-mile limit (Veh. Code. § 511) "would be a jury question and not one for judicial notice." But the signposting of a highway is absolutely essential for the application of the lower prima facie speed limits. Section 511, after excepting certain types of areas where lower speed limits apply, expressly prescribes a 55-mile limit "under all conditions unless a different speed is established as provided in this code *and signs are in place giving notice thereof.*" (Emphasis added.) Accordingly, "no area has the prima facie speed limit of a . . . residence district unless it is signposted." (*Reynolds* v. *Filomeo,* 38 Cal.2d 5, 13 [236 P.2d 801] ; *Guerra* v. *Brooks,* 38 Cal.2d 16, 19-20 [236 P.2d 807].) A witness for defendants testified that a 25-mile sign was posted for westbound Alemany traffic "right at the edge of the viaduct," which was "about two or three blocks" west of the intersection, and that while not sure, he did not believe that in the area in question there were any speed limit signs posted for eastbound boulevard traffic. No other evidence was adduced with regard to reduced speed limits under applicable signs. Defendants introduced in evidence diagrams showing that the boulevard lacked the requisite dwelling-house density for a "residence district." (Veh. Code, §§ 90, 90.1.) Manifestly, the mentioned 25-mile sign "right at the edge of the viaduct" directed to westbound traffic marked the entrance of boulevard traffic into a business or residence district extending to the *west* thereof and had no relevancy to speed for travel

eastward of it on either side of the boulevard. In such state of the record the court did not err in giving the challenged instruction.

The second point is plaintiffs' contention that the court gave an erroneous and misleading instruction on the effect of section 2055, Code of Civil Procedure. Defendant Urdahl was called by plaintiffs as an "adverse witness" and questioned at some length. In this regard the court charged: "I instruct you that testimony given under section 2055 . . . is just as much evidence in the case as any other testimony properly received. Such testimony is to receive the same consideration from the jury in determining the facts as any other testimony. Such testimony, if believed by the jury and if otherwise sufficient, will sustain a verdict against the plaintiffs in this case." Plaintiffs maintain that "the instruction should have explained that any such testimony elicited by the plaintiffs should weigh for them insofar as it was favorable, *but that it should be disregarded insofar as it was unfavorable,* if the matters to which it referred were not satisfactorily established by other evidence." (Emphasis added.) But plaintiffs are relying upon authorities involving rulings upon a motion either for a nonsuit (*Marchetti* v. *Southern Pac. Co.,* 204 Cal. 679, 686 [269 P. 529]; *Dempsey* v. *Star House Movers, Inc.,* 2 Cal.App.2d 720, 722 [38 P.2d 825]) or for a directed verdict (*Smellie* v. *Southern Pac. Co.,* 212 Cal. 540, 556 [299 P. 529]; *People* v. *Mahoney,* 13 Cal. 2d 729, 736 [91 P.2d 1029]). The rules therein stated have no application upon submission of the case for a determination of the factual issues on the merits. (*Figari* v. *Olcese,* 184 Cal. 775, 782 [195 P. 425, 15 A.L.R. 192]; *Dorn* v. *Pichinino,* 105 Cal.App.2d 796, 800 [234 P.2d 307].) The distinction is noted in the Smellie case, where, after a full discussion, it is stated that testimony elicited under section 2055 "is, of course, evidence in the case and may be considered in determining the issues of the case upon the trial or final hearing by the court, or if the case is before a jury, by the jury." (212 Cal. 559; see, also, *Green* v. *Newmark,* 136 Cal.App. 32, 37-38 [28 P.2d 395]; *Balasco* v. *Chick,* 84 Cal.App.2d 802, 808 [192 P.2d 76].) Since this case was submitted to the jury on the merits, the assailed instruction was proper. (*Joseph* v. *Vogt,* 35 Cal.App.2d 439, 441 [95 P.2d 947]; *Cloud* v. *Market Street Ry. Co.,* 74 Cal.App.2d 92, 96 [168 P.2d 191].)

▆▆ The final point is plaintiffs' contention that since there "was not the slightest evidence . . . upon which to base a finding of contributory negligence on the part of [plaintiff] Kathaleen Smith," the instruction submitting that issue as to her was contrary to both the law and the evidence. They cite as particularly objectionable the following charge: "If you find that the plaintiff Kathaleen Smith did not look carefully for traffic eastbound on Alemany Boulevard, and that she told Mrs. Daniels that Alemany Boulevard looked clear when in fact the bus was approaching so closely as to constitute an immediate hazard, the plaintiff Kathaleen Smith was in such case guilty of negligence." But the quoted instruction does not appear to have been improper in view of the record.

As the guest of Mrs. Daniels, Mrs. Smith could only be chargeable with negligence by reason of her own conduct rather than that of Mrs. Daniels. Mrs. Smith testified that as plaintiffs' automobile came to a stop at the boulevard intersection, she "glanced both ways" for traffic, that she "saw nothing coming," and that she agreed with Mrs. Daniels when the latter said that "it all looked clear and we might just as well go across." The record also shows that at the intersection a billboard obstructed the view looking to the left down the boulevard for eastbound traffic, so that defendants' bus did not come into the range of vision of Mrs. Daniels and Mrs. Smith until after the former started to drive across the boulevard. While ordinarily "a guest" is "not charged with the responsibility for observing the condition of the traffic upon the highway" (*Murphy* v. *National Ice Cream Co.,* 114 Cal.App. 482, 489 [300 P. 91]; see, also, *Martinelli* v. *Poley,* 210 Cal. 450, 458 [292 P. 451]), plaintiffs' evidence here shows that Mrs. Smith did undertake to make such observation and that she actively participated with Mrs. Daniels in their joint decision that the boulevard "was clear." Under these circumstances the quoted instruction properly stated considerations affecting the jury's determination of whether Mrs. Smith exercised "reasonable care for [her] own safety." (*Miller* v. *Peters,* 37 Cal.2d 89, 94 [230 P.2d 803].)

In view of the above discussion relative to the applicability of the last clear chance doctrine in the determination of this case and the court's refusal to instruct thereon, plaintiffs are entitled to a retrial.

The appeal from the order denying the motion for a new trial is dismissed. The judgment is reversed.

Gibson, C. J., Shenk, J., and Traynor, J., concurred.

Edmonds, J., dissented.

CARTER, J.—I concur in the judgment of reversal because I think it is obvious that reasonable minds might differ on whether or not defendant had a last clear chance to avoid the accident here involved. This is the one and only test which may be applied in determining whether a case comes within the last clear chance doctrine. There was a conflict in the evidence and the trier of fact might well have found that plaintiff Daniels was negligent in placing herself and Mrs. Smith in a position of peril which was perceived by defendant in time to avoid a collision if he had exercised ordinary care; that plaintiff was unable, by the exercise of ordinary care, to extricate herself and Mrs. Smith from such peril; and that defendant's failure to exercise ordinary care was therefore the proximate cause of the accident. The facts as disclosed by the record justify but do not compel this conclusion.

The last clear chance doctrine has been applied in numerous cases by the courts of this state. As a legal theory it is well understood by the legal profession. It is in the application of the doctrine to a particular case where conflicts arise. (See excellent article by Myron L. Garon, member of Los Angeles Bar, entitled *Recent Developments in California's Last Clear Chance Doctrine,* volume 40, Cal.L.Rev., pp. 404-411.) There can be no doubt that the doctrine has been manna for injured plaintiffs who have themselves been negligent. In my opinion it is a salutary doctrine evolved by great liberal-minded jurists to ameliorate the injustice which resulted from a rigid application of the plea of contributory negligence as a complete defense in an action for personal injuries. Like all other liberal doctrines it has met with opposition. Those opposed have generally rejected it as inapplicable to the factual situation presented in a particular case—holding the doctrine inapplicable as a matter of law. This conclusion being reached regardless of whether reasonable minds might differ as to the factual situation presented. Such cases as *Young* v. *Southern Pac. Co.,* 182 Cal. 369 [190 P. 36]; *Rodabaugh* v. *Tekus,* 39 Cal.2d 290 [246 P.2d 663]; *Johnson* v.

*Southwestern Eng. Co.*, 41 Cal.App.2d 623 [107 P.2d 417];
*Dalley* v. *Williams*, 73 Cal.App.2d 427 [166 P.2d 595]; *Gore*
v. *Market Street Ry. Co.*, 4 Cal.2d 154 [48 P.2d 2]; and
*Johnson* v. *Sacramento Northern Ry.*, 54 Cal.App.2d 528 [129
P.2d 503] fall in this category.

There are, of course, many cases in which the doctrine is
inapplicable. There are also borderline cases. The problem
is first for the trial court to determine. If it submits the
issue to the jury on proper instructions and the jury finds
liability, I do not think it can then be said that reasonable
minds cannot differ as to the applicability of the doctrine,
because, to so hold, is to say that the trial judge and members
of the jury do not have reasonable minds. If the trial judge
refuses to submit the issue to the jury, the same situation
arises as when a nonsuit, directed verdict or motion for judg-
ment notwithstanding the verdict is granted. The question for
the appellate court to determine in such a case is whether
there was any substantial evidence in the record on which a
trier of fact could reach a contrary conclusion. Of course,
if the appellate court holds that such evidence exists, the
reasonable minds doctrine comes into play and the case goes
back to the trial court where the issues of fact are determined.
This is and should be the law, because it is the product of
reason, logic and common sense. If it were applied by the
courts of this state, it would remove a tremendous burden
from this court and the District Courts of Appeal as well
as our superior courts. This is manifest when we consider
that many of the cases now before this court and the District
Courts of Appeal involve only factual questions which have
been determined by the trial courts and the question we are
asked to decide is whether the issues of fact were correctly
determined. This is not the function of this court or of the
District Courts of Appeal, and if the members of this court
would come to this realization, we would have more time to
consider questions of law and dispose of cases more expedi-
tiously. To demonstrate the truth of the foregoing statement,
I wish to call attention to the fact that we now have twelve
cases pending before this court which involve only factual
questions. Most of these cases, including the case at bar, were
correctly decided by the District Court of Appeal (see *Daniels*
v. *City & County of San Francisco,* *(Cal.App.) 246 P.2d
125, but these cases are before this court because a hearing

---

*A hearing was granted by the Supreme Court on Sept. 11, 1952.

was granted for the sole purpose of reconsidering questions of fact. I shall have more to say on this subject when the decisions in these cases are announced.

I also disagree with that part of the majority opinion which holds that the trial court properly submitted to the jury the issue of contributory negligence on the part of Kathaleen Smith. The uncontradicted evidence shows that Mrs. Smith was a guest in defendant Daniels' automobile, had no control over its operation and there is no basis whatsoever for an inference that any negligence on her part in anywise contributed to the accident. In this respect I am in full accord with the views expressed by the District Court of Appeal in its decision, *supra,* on this subject.

SCHAUER, J., Dissenting.—I would affirm the judgment. Here again, in my opinion, is a case in which application of the last clear chance doctrine has been extended past reasonable bounds and the doctrine has become not one of last *clear* chance but one of last *possible* chance. (See *Peterson* v. *Burkhalter* (1951), 38 Cal.2d 107 [237 P.2d 977], and my dissent at page 114; *Rodabaugh* v. *Tekus* (1952), 39 Cal. 2d 290 [246 P.2d 663], and my concurrence at page 297.)

Viewing the evidence most favorable to the application of the last clear chance doctrine, there is here a plaintiff who, having negligently placed herself in a position of peril (she disregarded the defendants' arterial right of way, drove at 5 miles an hour into the path of the bus, stopped, and then started up again, slowly), endeavors to escape therefrom and a defendant who is charged with negligence in failing to anticipate correctly, within a matter of seconds or fractions of seconds, what course plaintiff will take in the endeavor to escape the position of peril. Plaintiff was driving a relatively light and maneuverable automobile; defendant driver was operating a heavy and unwieldy bus. If plaintiff had either remained standing in the middle lane or had started her slow progress forward from such middle lane to the inner lane, then at once halted, and the bus had followed the course which it actually did follow, the collision would have been avoided. If plaintiff had progressed a little more rapidly the collision would have been avoided. If the bus driver had elected to take the outer lane the collision would have been avoided. To state that the bus driver, required to make such rapid and nice anticipations of plaintiff's possible conduct and such nice calculations of what his own conduct should be,

and to translate his conduct into control of the heavy and rapidly moving bus, had a *clear* chance to avoid the accident is, in my opinion, unrealistic and inaccurate. Where, as here, plaintiff has at least as much chance to avoid a collision as does defendant, I find no field for application of the last clear chance doctrine.

Decisions of this kind suggest a need for legislative study of the several facets of the problems involved. In this state, what is the annual toll of, and loss from, traffic accidents not industrially incurred? Can our society devise a better method for protecting or compensating the injured and their families than the common law tort action? If so, who should bear the primary burden of such protection? How far should it be spread? And in what forum enforced?

The above are but queries for future solution. The judgment here, on the present recognized concepts of law, should be affirmed.

Respondents' petition for a rehearing was denied May 7; 1953. Edmonds, J., and Schauer, J., were of the opinion that the petition should be granted.