[Civ. No. 13051. Second Dist., Div. Two.—June 20, 1941.]

OVIE RUFF JONES et al., Respondents, v. YUMA MOTOR FREIGHT TERMINAL COMPANY (a Corporation) et al., Appellants.

498

Chas. E. R. Fulcher and Reginald I. Bauder for Appellants.

Frank E. Carleton, Elmer P. Bromley and M. Richard Imes for Respondents.

WOOD, J.—This action was commenced by Ovie Ruff Jones and Naomi Brantley, husband and mother respectively of Ila Mae Jones, deceased, to recover damages for the wrong-

ful death of Ila Mae Jones and for personal injuries suffered by plaintiff Ovie Ruff Jones, alleged to have been caused by the negligent operation by the defendants of a motor truck and trailer. A jury returned a verdict in favor of Ovie Ruff Jones in the sum of $4,981.85 for his personal injuries and in favor of both plaintiffs in the sum of $3,200 for the wrongful death of Ila Mae Jones. For the sake of clarity and brevity the driver of the Ford car involved in the accident, Ovie Ruff Jones, will be referred to as plaintiff and the driver of the truck will be referred to as defendant.

The accident occurred at about 8 o'clock in the morning of January 9, 1940, on highway 99 in Riverside County. Plaintiff and his wife were driving in a southerly direction on the highway in an old Model T Ford and defendant was driving the truck and trailer in a northerly direction on the highway. Plaintiff decided to drive to the left across the highway to buy gasoline at a service station and as he made the turn his car was struck by the oncoming truck. The testimony of the various witnesses concerning the circumstances of the collision is highly conflicting. The two drivers gave very different versions of what took place at the time of the accident and each made statements before the trial which were contradictory of the statements he made on the witness stand. Defendant concedes that there is substantial evidence of defendant's negligence and also substantial evidence of the absence of negligence on the part of plaintiff and that if no instruction had been given to the jury upon the doctrine of the last clear chance the verdict could be sustained. But he insists that the record contains no evidence to justify the giving of this instruction and therefore asks to have the judgment reversed. He does not contend that the doctrine was erroneously stated by the court to the jury. The only question for our decision is whether the court was justified in instructing the jury on the doctrine of last clear chance.

Both parties concede that under the decisions of the reviewing courts of California it is reversible error to give instructions to the jury on the last clear chance doctrine in the absence of substantial evidence from which it might be found that all of the necessary elements of the doctrine are present. (*Poncino* v. *Reid-Murdock & Co.*, 136 Cal. App. 223 [28 Pac. (2d) 932]; *Wallis* v. *Southern Pac. Co.*, 184 Cal. 662 [195 Pac. 408, 15 A. L. R. 117].) ▮ The necessary

elements of the last clear chance doctrine are stated in the frequently cited case of *Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 Pac. (2d) 915] : "That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation, and has the last clear chance to avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure."

In the Girdner case the plaintiff was driving a touring car towards the highway at a speed of twelve or fifteen miles per hour. In that case the plaintiff testified that as he approached the highway he looked to the north and saw no cars approaching; he then looked south down the highway; he did not look again to the north but drove onto the highway, still looking to the south when he was struck by defendant's truck; he did not see the truck of the defendant before the collision. The driver of the defendant's truck testified that he saw Girdner when he was about fifty feet north of the intersection travelling at about fifteen miles per hour; that Girdner did not look in his direction; that he took his foot off the gas accelerator and let the truck drift toward the intersection; that when he got about fifteen feet from the point of collision he applied his brakes and turned his truck to the right when about four or five feet from the point of collision; that he did not sound his horn as he approached the intersection. The court found on sufficient evidence that the truck driver was proceeding at a speed rate of twenty miles per hour. The Supreme Court held that the facts in the case justified a recovery under the doctrine of the last clear chance.

In passing upon the question whether the record contains sufficient evidence to justify the giving of the last clear chance doctrine we must consider all of the evidence before the court regardless of which party presented it and, disregarding conflicts, must view the evidence in the light most favorable to the contention that the doctrine is applica-

ble, indulging every reasonable inference supporting the application of the doctrine. If under any reasonable view of the evidence the doctrine could apply it was proper to give instructions on the subject. ▆ Bearing in mind this rule, we find evidence in the record furnishing justification for giving the instructions in question. A finding that plaintiff was himself negligent could be based upon the fact that he turned to the left across the highway without observing the oncoming truck which he could have seen if he had exercised due care. Defendant testified that he first saw plaintiff's car when approximately a quarter of a mile away; that when he was within 150 to 200 feet from defendant he saw defendant's arm extended for a left turn; that his truck and trailer had a combined weight of approximately seven tons and were equipped with air brakes; and that he did not sound his horn at any time. He admitted that he did not promptly apply his brakes but claims that plaintiff first turned to the left and then suddenly turned back sharply to the right, at which time he applied his brakes. Plaintiff testified that as he extended his arm to indicate the left turn he looked up and down the highway and saw nothing approaching; that his speed was approximately ten miles per hour; that he first knew of the approaching truck when his wife screamed, at which time the truck was closer than 30 or 40 feet, coming across the road and bearing down on him; realizing there would be a collision he suddenly veered to the right, when the truck hit his car. Other witnesses testified that defendant was travelling in excess of 45 miles per hour and that his speed was not slackened before the collision; there were skid marks on the highway made by the truck beyond the point of collision but there were no skid marks on the line of the truck's approach to the point of collision; that defendant for some distance beyond the point of collision was driving slightly to the left of the center line of the highway and straddling the center line. From these circumstances the jury could reasonably draw the inferences that plaintiff, having been guilty of contributory negligence, was in a position of peril; that defendant knew of plaintiff's perilous situation and that plaintiff could not through the exercise of ordinary care escape from the danger; and that by sounding his horn and slackening his speed defendant could have prevented the collision. ▆ Knowledge of the dangerous situa-

tion of the plaintiff can be imputed to the defendant when the circumstances are such as to convey to the mind of a reasonable man that the plaintiff is in a position of peril. (*Nicolai* v. *Pacific Elec. Ry. Co.*, 92 Cal. App. 100 [267 Pac. 758].)

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 18, 1941.