[Civ. No. 3534.   Fourth Dist.   Apr. 9, 1947.]

VESTA K. ALWARD et al., Appellants, v. NICK PAOLA et al., Respondents.

Schmidt & Catalano, Oscar F. Catalano, Walter Maas and Herbert Chamberlin for Appellants.

Borton, Petrini, Conron & Borton and P. R. Borton for Respondents.

GRIFFIN, J.—This action for damages arose out of an automobile collision happening on May 20, 1945, at about 11:30 a. m. on a clear day, on U. S. Highway 99, over the "Five Mile Grade" about 15 miles north of Castaic.

Plaintiff alleges negligence of defendants and defendants claim defenses of contributory negligence, joint enterprise, and unavoidable accident.

The three-lane highway at the place of the accident runs north and south. Each lane was 10 feet in width with a four-foot shoulder on each side. There is a canyon on one side and a bank on the other. The roadway is posted with signs reading "Use center lane for passing only." The road descending from the top of the "Five Mile Grade" to the point of collision contains a large number of curves. In the immediate vicinity of the collision, however, the road was comparatively straight for a distance in excess of 450 feet.

Defendant Bessie Paola left Bakersfield in a 1940 model Buick automobile owned by her and her husband, defendant Nick Paola. She followed her husband, who was driving his sister's car to Los Angeles to be stored. After going up a hill and starting down the "Five Mile Grade" at a speed of about 40 miles per hour, she testified that her Buick appeared to be gaining on her husband's car; that she attempted to apply her brakes to retard the speed but that the foot brakes failed to function and the Buick continued to gain speed; that she became excited and tried to prevent a collision by driving in the center lane; that she proceeded down the grade, passing and overtaking cars in this manner, with the car out of control, for about two miles; that she gained speed up to 60 miles per hour and finally struck the rear left fender of a light-colored car proceeding in the same direction when endeavoring to turn out and pass it; that soon thereafter she struck plaintiffs' car, a Dodge sedan, approaching her from the south; that she observed lots of cars proceeding in both directions but, in the stress of her emotions, she did not recollect seeing any specific automobiles or in which lane she or

they were traveling, including the ones she came in contact with; and that during this entire period she did not remember "whether or not she attempted to use the handbrake or sound the horn."

Plaintiffs were traveling northerly. They had been to Los Angeles shopping and plaintiffs Alwards, who were seated in Regan's car, had purchased three four-gallon cans of light-colored paint for their use. This paint was in the back seat portion of the car. Each occupant testified that the driver, Mr. Regan, was proceeding in the easterly north-bound lane, at about 45 miles per hour when the accident happened. Mr. Regan testified that up to one week before the trial, he was not positive whether the accident occurred in the center lane or partially there, but that after he went back and observed the paint spilled in the roadway he concluded that the accident happened completely over in his easterly lane. He testified that he was not then nor had he been overtaking any other car proceeding in the same direction necessitating his traveling in the center lane; that while he was traveling upgrade defendants' car came around a curve about 400 feet north of him at about 60 miles per hour; that it hit the rear of a portion of another car traveling in the same direction and then careened across the highway and collided with his Dodge sedan; that the right front portion of the Buick struck the right front portion of his Dodge; that the force of the impact knocked the tops off of the paint cans and scattered the contents over the car and pavement, and the paint leaked out of the right-hand or easterly side of the Dodge down onto the pavement. The Dodge was almost a complete wreck and debris was scattered over the highway. Each occupant thereof was knocked unconscious and was seriously injured.

Two highway patrolmen arrived at 11:45 a. m., investigated, and noted the physical facts. One testified that the paint ran out of plaintiffs' car near its right front door onto the pavement and in the north-bound lane; that the highway sloped in a westerly direction; that some of the paint "dripped over in the center lane" i. e. "run into the center lane"; that there were continuous brake marks north of the accident for 108 feet on the west side, commencing in the westerly portion of the center lane, and 100 feet on the east side of the center lane down to the paint spots; that there were two sets of brake marks in the north-bound lane 42 to 49 feet in length running in a northeasterly direction toward the easterly shoulder of

the road. He testified that within an hour after the accident he tested the foot-brakes of the Buick and there was "pedal pressure there . . . after pushing the pedal down about one-half way"; that the master brake cylinder was about one-half filled with fluid. Another test was made while the Buick was being towed to the garage with a like result. The brake lining was also examined and there was no failure of brakeage. Some of the debris from the impact (headlight glass, tail light glass, and pieces of metal) were found in the center of the center lane just north of the paint spots.

Mrs. Paola signed a written statement, obtained by the officer, in which she stated that "the brakes would not hold"; that she "tried to stop and couldn't, so I tried to stay in the middle lane and was going faster all the time. After hitting the other car I could see myself going over the bank, was knocked to the bottom of my car. I took hold of the wheel and turned it toward the bank to stop the car."

The officer further testified that there was a head-on collision between the two cars; that the Dodge, plaintiffs' car, came to rest facing in a northeasterly direction and that it was partially in the northbound lane with its left rear wheel extending "2½ feet into the center lane" and the Buick, the defendants' car, was on the westerly side of the highway on the shoulder, facing south, and about 156 feet beyond the Dodge.

Defendants then produced two witnesses who admittedly qualified as expert mechanics specializing in braking systems of automobiles. Questions were propounded to them (over objections as to the form of question) based upon the evidence above set forth. Each testified that in the "1940" model Buick there was a "bug" in the construction by the manufacturer in that the master cylinder of the brake system was placed within three inches of the exhaust pipe; that as a result thereof, occasionally, on climbing a hill, when the exhaust became hot from the combustion of gas in the motor, the brake fluid would boil so that vapor or gases would be present in the brake lines; that such condition rendered the braking system inoperative until such time as the vapors or gases in them cooled (a matter of a few minutes), permitting condensation to a liquid, and then there would be brakes present again. In response to the hypothetical question, as submitted, they gave the opinion that this is what occurred in the Buick

automobile on the day in question; and that there was no way to anticipate or foretell that it would occur.

There was evidence that the Buick had been checked as to its braking capacity and other running qualities a short time before the accident and that, so far as defendants knew, the car was in first-class running condition.

In addition to the general instructions on negligence and contributory negligence, at the request of defendants, the court gave an instruction on the doctrine of sudden peril and unavoidable accident. This instruction was followed by the instruction (No. 32) that:

"You are instructed that the law recognizes what is known as an unavoidable accident in which there is no legal responsibility of any of the parties thereto to respond in damages to the other.

"You are further instructed in this connection that an accident, the sole cause of which is the failure of a mechanical function of an automobile of which the driver or owner was not aware and which he could not have anticipated in the exercise of ordinary care, is an unavoidable accident."

It then instructed the jury (Instruction No. 33):

"You are instructed that when a motor vehicle and the devices and appliances attached thereto have been purchased and procured from reputable manufacturers, then no other examination or inspection is required of the same by the owner or operator thereof other than such as is practicable and usual among ordinarily prudent operators or owners of similar vehicles, and the owner or operator is not legally responsible for defects or faults therein nor for an accident resulting solely and proximately therefrom, when such examination or inspection as is practicable and usual among ordinarily prudent operators or owners of similar vehicles would not have disclosed the defect or fault in question. . . . It is a question for the jury to determine whether or not there was a mechanical defect or failure in this car."

This was followed by the instruction (No. 34):

"The jury is instructed that a person who, through no fault of his own, is confronted with a sudden and dangerous emergency, is not held to the same degree of care in his choice of action, in relation to such emergency, as would be one who had due time for calm thought and consideration. It might be that, of several different expedients with which to meet the

situation, he might overlook one entirely, or choose unwisely one less adequate to avoid the accident than others open to him, or even a course of action necessarily resulting in an accident. Notwithstanding this, such person would not be guilty of negligence unless, in his choice of action, it could be said that he did not use the same degree of care that an ordinarily prudent person would have used in the same situation and confronted by the same emergency.''

Upon this evidence and under the instructions given, the jury found in favor of defendants. A motion for new trial was denied.

It is argued on this appeal that the jury was misdirected by the instructions given, to plaintiffs' prejudice, and that the evidence did not warrant the giving of such instructions on the doctrines above mentioned; that instruction number 33 expounded the law applicable to the purchase of a new automobile from the manufacturer and that since the Buick was of a somewhat ancient vintage, that doctrine did not apply, citing *Whitechat* v. *Guyette,* 19 Cal.2d 428, 436 [122 P.2d 47] ; *Davenport* v.. *Stratton,* 24 Cal.2d 232, 254 [149 P.2d 4] ; *Scandalis* v. *Jenny,* 132 Cal.App. 307, 313 [22 P.2d 545] ; *Hyman* v. *Market Street Ry. Co.,* 41 Cal.App.2d 647, 650 [107 P.2d 485].

In connection with instruction Number 34, it is further argued that that instruction told the jury that under the doctrine of sudden peril the operator of an automobile would not be guilty of negligence if he exercised ordinary care, *in his choice of action* when confronted by a sudden and dangerous emergency; that the duty to exercise ordinary care is a continuing one under the sudden peril doctrine and that that duty does not begin and end with *the choice of action,* but continues and persists at all times without and notwithstanding the choice, citing *Reuman* v. *La Monica,* 58 Cal.App.2d 303, 305 [136 P.2d 81].

The general instructions on the doctrines of unavoidable accident and sudden peril, if appplicable under the evidence, are not erroneous or prejudicial, nor is instruction Number 34, when read and considered in its entirety, fairly susceptible of the interpretation placed upon it by plaintiffs. The courts have approved instructions substantially similar to the one here in question in regard to the term ''choice of action.'' (*Mortensen* v. *Fairbanks,* 1 Cal.2d 489, 492 [35 P.2d

1030]; *Olsen* v. *J. J. Jacobs Motor Co.*, 99 Cal.App. 423, 434 [278 P. 1051]; *Girard* v. *Irvine*, 97 Cal.App. 377 [275 P. 840]; *Galwey* v. *Pacific Auto Stages, Inc.*, 96 Cal.App. 169 [273 P. 866].)

The instruction in *Reuman* v. *La Monica, supra,* was criticized due to the wording, which wording permitted the person in a position of sudden peril to do "the best he could under the circumstances to avoid the accident," and that case held the true rule to be that such person was required to do what a reasonably prudent person would have done under similar circumstances. The criticized instruction here involved placed that same standard of care upon defendants.

As to instruction Number 33, there is evidence that some 1940 Buicks came from the manufacturer with a defect in construction in reference to the braking system and that this "bug" was not such as to be discoverable by an ordinary lay person or by any ordinary, reasonable inspection; that such defect came about through original design and construction by the manufacturer and was not due to any wear or tear, age or use while in the hands of the ultimate user. There is no evidence anywhere in the record, nor has it ever been contended that any reasonable inspection of any kind by the owner or operator of the vehicle would have led to the discovery of the defect of the original manufacturer. There was sufficient evidence justifying the trial court in giving that instruction. (*Brandes* v. *Rucker-Fuller Desk Co.*, 102 Cal. App. 221 [282 P. 1009].)

This case is factually different from the case of *Whitechat* v. *Guyette supra*. Even in that case it was held that the reasonableness of the efforts of the operator to ascertain the existence of the possibility of mechanical failure was a question for the jury to determine.

In *Jones* v. *Yuma Motor F. Terminal Co.*, 45 Cal.App.2d 497, 500 [114 P.2d 438], it was said: "In passing upon the question whether the record contained sufficient evidence to justify the giving of the last clear chance doctrine [that same rule would apply here], we must consider all of the evidence before the court regardless of which party presented it and, disregarding conflicts, must view the evidence in the light most favorable to the contention that the doctrine is applicable, indulging in every reasonable inference supporting the application of the doctrine. If, under any reasonable view of the

evidence, the doctrine could apply, it was proper to give instructions on the subject.''

█ Objection is next made to the ruling of the court in reference to the hypothetical questions propounded to the mechanical experts in relation to their opinion as to the cause of failure of the brakes on the Buick car to operate properly. It is contended that counsel for defendants failed to include in the question certain evidence relating to the presence of ''brake marks'' on the highway, and in reference to the method used in operating the car. It is defendants' contention that the ''brake marks'' described by the officer were not brake marks from defendants' car. In propounding the question defendants had the right to base that hypothetical question on any theory which might be logically deduced from the evidence, and considerable latitude is allowed in the choice of facts as a basis on which to frame such a question. (*Treadwell* v. *Nickel,* 194 Cal. 243, 267 [228 P. 25].) Measured by the rule set forth in that case, the question as propounded was not objectionable. Wide latitude in cross-examination should be allowed under such circumstances, to determine whether the omission of any facts in evidence might change the opinion of the expert. Plaintiffs were offered this opportunity.

█ An opinion not founded on all of the facts goes to the weight of the evidence and not to its competency or materiality. (*Matthiesen* v. *Smith,* 16 Cal.App.2d 479 [60 P.2d 873].) The jury was instructed on the question of the weight and credibility of witnesses. We perceive no error in the court's ruling. (*Forbis* v. *Holzman,* 5 Cal.2d 407 [55 P.2d 201].)

As to the sufficiency of the evidence to support the judgment for defendants, a more serious question arises. We, at the outset, find ourselves bound by the familiar rule that all conflicts in the evidence must be resolved in favor of the judgment and all legitimate and reasonable inferences indulged in to uphold it. █ All intendments are in favor of the judgment arrived at on conflicting testimony, and where the facts are such that contradictory inferences can reasonably be drawn from them, the appellate court will not substitute inferences or its own judgment for those adopted by the jury. (*Arundel* v. *Turk,* 16 Cal.App.2d 293 [60 P.2d 486], and many cases therein cited.)

█ There was evidence produced by defendant driver that her footbrakes would not function, and her expert wit-

nesses did testify to a plausible reason, if believed by the jury, why those brakes failed to function. Mrs. Paola's testimony as to the condition of her foot-brakes, to us, loses some force by reason of the testimony of the traffic officer that there were two "brake marks" for a distance of nearly 108 feet on the highway at the scene of the accident which corresponded to the path taken by her car. Likewise, her explanation as to her apparent failure to apply the emergency brakes, which she testified had been in good working condition prior to the accident, to us, casts some doubt on the conclusion reached by the jury that she was not negligent. However, it is not within our province to weigh the evidence, and it cannot be said that there is no evidence to sustain the implied finding that Mrs. Paola was not negligent. Moreover, we are confronted with the claim of contributory negligence. There was some substantial evidence, if believed by the jury, that might indicate that the collision occurred in the center lane of the three-lane highway and that at that time plaintiff driver was not overtaking and passing any other car proceeding in the same direction.

In addition to other requirements, section 526 of the Vehicle Code contains a clause providing that "Upon a roadway which is divided into three lanes a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle where the roadway ahead is clearly visible and such center lane is clear of traffic within a safe distance. . . ." The jury may have concluded that plaintiff driver violated that section and was negligent and that such negligence contributed proximately to the accident by reason of the fact that plaintiffs' car blocked the center lane of the highway to the use of the Paola vehicle descending the grade out of control and in an effort by the driver to go around the light-colored vehicle proceeding in the same direction ahead of her. The question of contributory negligence and joint enterprise were submitted to the jury under proper instructions and it found adversely to plaintiffs on those issues. There was sufficient evidence to support the conclusion reached.

The question of the sufficiency of the evidence to support the judgment was again submitted to the trial court on a motion for new trial. If the trial court, sitting as a thirteenth juror, was of the opinion that the evidence was insufficient, and that an injustice resulted, it was its duty to grant a new trial. Great latitude is allowed by appellate courts in upholding trial judges who, in their sound discretion, grant such motions, even in the face of verdicts by the jury. (*People* v.

*Cesena,* 18 Cal.App.2d 727 [64 P.2d 732] ; *Sassano* v. *Roullard,* 27 Cal.App.2d 372 [81 P.2d 213].)  We are not confronted with this same discretionary power, but are guided by the rules above mentioned.  The trial judge denied the motion for a new trial after a full hearing.  We are unprepared to hold that there was not sufficient evidence as a matter of law to support the judgment.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 3, 1947.  Carter, J., and Schauer, J., voted for a hearing.