[Civ. No. 5371.   Fourth Dist.   Mar. 28, 1957.]

LEONARD BOGERT, Respondent, v. FREDERICK J. CLAWSON et al., Appellants.

Baker, Palmer, Wall & Raymond for Appellants.

Leon Boro and LeRoy Snyder, Jr., for Respondent.

MUSSELL, J.—This is an action for damages for personal injuries sustained by plaintiff in an accident which occurred on June 11, 1954, at about 10:30 p. m. on United States Highway 99, approximately one-half mile north of Grapevine Station on what is known as the Grapevine grade, in Kern County. This grade is approximately 6 miles long and has a 6 per cent downgrade for northbound traffic. In the area where the accident occurred the highway is divided into four lanes, separated by a concrete and steel barrier, approximately 30 inches high. Three northbound tractor-trailer truck combinations were involved. At the time of the accident, plaintiff was driving his tractor-trailer, partially loaded, in the outer or east northbound traffic lane, when a tractor-trailer driven by one Henry Norman in the inner lane, and owned by Kings County Truck Lines, was in the process of passing plaintiff's equipment. The third truck and trailer, owned by defendant Don E. Tully and being driven by defendant Frederick J. Clawson, collided first with the rear of the Norman truck and trailer and then with plaintiff's truck and trailer, causing injuries to plaintiff. The Clawson truck and trailer was traveling down the grade, out of control. Clawson was unable to stop it and collided with plaintiff's truck and trailer at a speed of between 50 to 60 miles per hour.

A jury returned a verdict against appellants Tully and Clawson and against Henry C. Norman and Kings County Truck Lines, a corporation, owners of the truck and trailer operated by Norman. A motion for a new trial was granted as to defendants Norman and Kings County Truck Lines, and defendants Clawson and Tully appeal from the judgment. The sole ground relied upon by appellants for reversal of the judgment is that there was prejudicial error in the trial court's refusal to instruct the jury on the doctrines of mechanical failure and unavoidable accident.

At the outset, it may properly be observed that appellants' answer to the first amended complaint contains no allegation that the collision was due to an unavoidable accident or was

the result of a mechanical failure of appellants' equipment. In this connection, appellants offered instructions which the trial court refused to give. They are as follows:

"You are instructed that if the defendants Tully and Clawson cared for and maintained the mechanical system of the truck in the same manner and as frequently as a reasonably prudent person would deem the same necessary, and used the same precautions in said maintenance as a reasonably prudent person would do, and if you further find that their part in the accident here in question resulted solely and proximately from a latent failure in the equipment on said truck, which could not be known or remedied by such measures, then, as to the defendants Tully and Clawson, this accident was an unavoidable accident, in which case there is no legal responsibility on those defendants to respond in damages to the plaintiff."

"If you find that the sole cause of this accident, insofar as the defendants Frederick Clawson and Don E. Tully are concerned, was the failure of a mechanical function on the truck in which they were riding, and if you further find that the defendants Tully and Clawson could not have anticipated the mechanical failure in the exercise of ordinary care, then as to those defendants this accident is what is known as an unavoidable accident, and there is no legal responsibility of the defendants Tully and Clawson to respond in damages to the plaintiff."

These instructions were only proper and required to be given if there was evidence that the accident resulted solely and proximately from a latent failure in the equipment which could not be known or remedied, or a failure of a mechanical function of the truck and trailer which could not have been anticipated by appellants by the exercise of ordinary care.

In 24 California Jurisprudence, Trial, section 78, it is stated that a request for an instruction may properly be refused if it is inapplicable to the issues raised by the pleadings, or if it is not pertinent to some issue or theory developed by the evidence; that even though a request is pertinent to an issue presented by the pleadings, refusal of it is proper if such issue is wholly unsupported by the evidence; and that in fact, the refusal of requests in such cases is not only proper, but their allowance constitutes error which, if prejudicial, warrants a reversal.

In *Ackerman* v. *Griggs*, 109 Cal.App. 365, 367 [293 P. 115], it was held that there was no error in refusing an

instruction where such proposed instruction was one on facts which were not supported by any evidence. In *Risdon* v. *Yates*, 145 Cal. 210, 217 [78 P. 641], it was held that instructions, though abstractly correct, should not be given if they are inapplicable to the evidence and may mislead the jury. In *Buttrick* v. *Pacific Elec. Ry. Co.*, 86 Cal.App. 136, 139-140 [260 P. 588], it is said: "The giving of an instruction which finds no support in the evidence is improper and, if prejudicial, is ground for reversal." (Citing cases.)

In the instant case defendants Tully and Clawson introduced no evidence showing that there was a failure of the mechanical system of their truck and trailer. Tully had his truck under control after the accident and drove it to Bakersfield. He produced no evidence that the brakes were not functioning immediately after the accident and produced no mechanics or experts to show that any air lines or any part of his braking system had either partially or completely failed. Clawson's statement to the highway patrol officer immediately after the accident was that he "was driving north at a speed of about 30 miles per hour on the Grapevine when the brakes became hot and faded out on him about a half mile south of Grapevine." No claim was made by him of any latent defect in his equipment or that any part of the braking system was broken or that there was any other mechanical defect in the truck or trailer. Clawson testified that it was his first trip over the Grapevine; that Tully was asleep in the sleeper when they started down the grade; that as soon as he had difficulty with his brakes, he called Tully and that at the time he (Clawson) was "banking the cement wall"; that when Tully got down to the cab they were traveling about 30 miles per hour; that he started down the hill in second-direct gear; that he had traveled down the grade about two miles when his brakes "commenced not to hold it any more and just kind of faded out" when he was traveling at about 15 miles per hour; that he tried to stop his equipment by turning it into the guardrail or barrier and it kept bouncing out; that Tully told him to get away from it and "stay away from it because I think he was scared we would go over the top"; that when they went by the Grapevine they thought they were holding their speed; that when he called to Tully he was shifting into a higher gear to "keep the motor in the truck"; that he also did some shifting into higher gear after Tully climbed into the cab; that the shifting into higher gear would increase the speed of the truck

slightly and would decrease the tendency of the motor to hold the truck; that in shifting he took his foot off the brakes and used the brakes intermittently; that he supposed the reason he did not have his brakes all the way down was that he was afraid he would burn them clear out; that by applying varying pressures to the brakes "it seemed like the brakes held a bit and that they held better the harder he put them on."

Henry Norman testified that when he talked to Clawson after the accident he asked him "what the hell he came off so fast for, he said, 'Well, maybe I came off too fast. I don't know the hill', or similar to that."

Highway Patrol Officer Bard testified that there is a sign posted at the top of the grade on the right-hand side of the northbound traffic lane reading "5 miles at 6% downgrade, trucks use low gear"; that in his opinion, in most instances, vehicles go out of control because they come down the hill too rapidly to begin with and, in most instances, their brakes fade; that during his investigation neither Clawson nor Tully complained to him of a mechanical failure of their equipment.

The trial court gave the following instruction on unavoidable accident:

"In law we recognize what is termed an unavoidable or inevitable accident. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply denote an accident that occurred without having been *proximately* caused by *negligence*. Even if such an accident could have been avoided by the exercise of exceptional foresight, skill or caution, still, no one may be held liable for injuries resulting from it."

"The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. It is the efficient cause—the one that necessarily sets in operation the factors that accomplish the injury. (It may operate directly or through intermediate agencies or through conditions created by such agencies.)"

Appellants, in support of their contention, cite *Howard* v. *Triangle Freight Lines,* 109 Cal.App.2d 620 [241 P.2d 35]. In that case plaintiffs were injured in a collision between an automobile and truck. A copper air line on the truck, which ran to the trailer, suddenly broke and the loss of air locked the brakes. Walker, the driver, turned the equipment

to the right-hand shoulder of the road and while it was partly on the shoulder and partly on the highway, plaintiffs' car crashed into the left rear corner of the trailer. It was there held that there was no negligence on the part of the driver but that it did not follow that the owners could not be liable since they were also charged with negligence in knowingly permitting this equipment to be operated with such defective brakes that a sudden stop would probably result. This case differs from the case at bar in that here we have no broken fittings, no broken air line and no evidence that there was anything mechanically wrong with the Tully truck and trailer.

In *Phillips* v. *Pickwick Stages,* 85 Cal.App. 571 [259 P. 968], also cited by appellants, the driver of the stage put it in low gear and rolled down a hill. He tried to stop the stage by means of the use of the foot brake and in so doing, the foot pedal which operated that set of brakes suddenly broke, rendering it useless. The driver was unable to stop the equipment and it ran into plaintiffs, who were watching a parade. The court held that if the sole proximate cause of the accident was due to the breaking of the foot pedal due to a latent defect which could not have been discovered upon a careful examination and inspection, appellant would not be liable, and further stated, at page 574:

"While instructions in a particular case are to be determined, not alone by the pleadings therein but also by the evidence in support of the issues between the parties, and even though an issue is raised by the pleadings, it is not proper to give an instruction thereon although it may be abstractly correct where there is no basis for it in the evidence (14 R.C.L. 786), still it must appear that injury resulted therefrom in order to warrant a reversal."

*Barber* v. *Gordon,* 111 Cal.App. 279 [295 P. 377], is also cited by appellants. In that case the appellants were driving northerly on a public highway in the county of Ventura. At the same time, respondent was driving southerly. As the respective parties approached a turn in the road, the automobiles collided. The jury found in favor of the defendant in both actions. The defense of inevitable accident was based upon the alleged locking of the steering mechanism of the car driven by the respondent. According to the testimony of the respondent, at the time of the collision the steering mechanism became locked so that it was impossible to turn the automobile to the right in rounding a curve, in order

to avoid the collision. It was there held that the evidence was sufficient to sustain the finding of unavoidable accident based upon the alleged locking of the steering mechanism of the car driven by respondent.

In *Alward* v. *Paola*, 79 Cal.App.2d 1 [179 P.2d 5], cited by appellants, defendant testified that she was driving a 1940 Buick car and following her husband en route to Los Angeles; that after going up a hill and starting down the ''Five Mile Grade'' at a speed of about 40 miles per hour, her Buick appeared to be gaining on her husband's car; that she attempted to apply her brakes to retard the speed but that the foot brakes failed to function and the Buick continued to gain speed; that she became excited and tried to prevent a collision by driving in the center lane; that she proceeded down the grade, passing and overtaking cars in this manner, with the car out of control, for about two miles; that she gained speed up to 60 miles per hour and finally struck the rear left fender of a light-colored car proceeding in the same direction when endeavoring to turn out and pass it; that soon thereafter she struck plaintiffs' car, a Dodge sedan, approaching her from the south. Expert mechanics testified that in the 1940 model Buick there was a ''bug'' in the construction by the manufacturer in that the master cylinder of the brake system was placed within three inches of the exhaust pipe; that as a result thereof, occasionally, on climbing a hill, when the exhaust became hot from the combustion of gas in the motor, the brake fluid would boil so that vapor or gases would be present in the brake lines; that such condition rendered the braking system inoperative until such time as the vapors or gases in them cooled (a matter of a few minutes), permitting condensation to a liquid, and then there would be brakes present again. In response to the hypothetical question, as submitted, they gave the opinion that this is what occurred in the Buick automobile on the day in question; and that there was no way to anticipate or foretell that it would occur. It was there held that the general instructions on the doctrine of unavoidable accident and sudden peril were proper and that ''As to instruction Number 33, there is evidence that some 1940 Buicks came from the manufacturer with a defect in construction in reference to the braking system and that this ''bug'' was not such as to be discoverable by an ordinary lay person or by any ordinary, reasonable inspection; that such defect came about through original design and construction by the manu-

facturer and was not due to any wear or tear, age or use while in the hands of the ultimate user. There is no evidence anywhere in the record, nor has it ever been contended that any reasonable inspection of any kind by the owner or operator of the vehicle would have led to the discovery of the defect of the original manufacturer. There was sufficient evidence justifying the trial court in giving that instruction.''

In the instant case there was no testimony, expert or otherwise, of a mechanical defect or ''bug'' in the Tully truck and trailer and we find no prejudicial error in the refusal of appellants' proposed instructions.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 22, 1957.