Filed 1/13/25  Marriage of Chen CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of SARAH and JORGE CHEN. | H051112<br>(Santa Cruz County<br> Super. Ct. No. 21FL00475) |
| JORGE CHEN,<br><br>        Appellant,<br><br>    v.<br><br>SARAH CHEN,<br><br>        Respondent. | |

Jorge Chen (Father) appeals the trial court's order granting Sarah Chen's (Mother) request to move with their child to Minnesota.  He contends the trial court erred by failing to exclude the custody evaluator's testimony and report because the evaluation was not executed in compliance with required legal standards under the Family Code, Evidence Code, and California Rules of Court.  Specifically, he argues the evaluation was conducted without the necessary identification of its purpose and scope; the written procedures governing the evaluation were not defined, which allowed the evaluator's report to improperly consider and weigh hearsay; and the evaluator refused to provide her case file to Father or his counsel prior to the evidentiary hearing, prejudicing Father's ability to refute the expert's opinion.  He asserts the cumulative procedural errors compel reversal of the trial court's custody order under *In re Marriage of Seagondollar* (2006)

139 Cal.App.4th 1116 (*Seagondollar*). He also contends the trial court abused its discretion when assessing the factors which must be considered when a parent requests a custody order to move away with the child under *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072 (*LaMusga*).

Although we conclude the trial court erred in not using or requiring the use of certain mandatory forms, we determine this error was harmless. We conclude the trial court appropriately exercised its discretion under *LaMusga* when it issued the custody order granting Mother's move away request. Accordingly, we affirm.

## I.    BACKGROUND

Father and Mother married on November 21, 2015, and separated on May 14, 2021. They have one minor child, E.C. After their separation, the parties stipulated to share joint legal and physical custody.

In February 2022, Mother filed a request for an order allowing her to move to Moorhead, Minnesota with E.C. She stated she needed to relocate for health and stability reasons, Father worked many weekends, and after the move, E.C. would be surrounded by family. Elaborating in her accompanying declaration, Mother stated she was being treated for breast cancer, and had a support network of family and friends in Minnesota who could help with transportation, childcare, housing, and providing emotional support. Mother asserted her parents lived in Jamestown, North Dakota, an hour away, and her brother and cousins lived in Fargo, North Dakota, across the river from Moorhead. In her original petition for dissolution, filed in May 2021, she stated Father would have outbursts of anger, and he had hit their dog in the head.

Father objected to the move, stating in his response he wanted to maintain joint legal and physical custody of E.C. with a 50/50 parenting plan. He asserted he was very involved in E.C.'s care on a daily basis, as well as celebrating events with her. He disputed Mother's characterization of him as an angry person and contended he did not

2

hit the dog, but only pushed the dog away from a bag of food, which Mother took out of context.

As part of Mother's request to move, she asked for a move-away evaluation. Although Father objected to the move generally, he agreed a move-away evaluation was appropriate and Mother's request for the evaluation should be granted. The parties thereafter agreed in court to a move-away evaluation with evaluator Shannon Seeley. Seeley provided her child custody/move-away evaluation and recommendations after reviewing court documents, interviewing the parents and others, and conducting home visits and parent-child observations.

Prior to the hearing on the move-away request, Mother identified Seeley as a witness. Father moved in limine to exclude Seeley's testimony and report.[1] He argued Seeley's evaluation was not conducted in accordance with legal requirements, Seeley's opinion in her report was based on inadmissible case-specific hearsay, and he was denied access to her case file.

The trial court denied the motion in limine to disqualify Seeley, finding "[h]er Curriculum Vitae, her testimony in voir dire and cross[-]examination on February 27, and the fact that both parties with qualified counsel stipulated to Ms. Seeley prove Ms. Seeley's education, continuing education, experience and expertise qualify her as an expert in Child Custody Evaluations, Move-Away Evaluations and Parent-Child Contact Issues." The court stated both parties understood the scope of the evaluation, and neither party objected that they did not have Seeley's case file but instead indicated their readiness to proceed with the hearing. The trial court found objections not made earlier were waived.

---

[1] Father retained new counsel shortly before the move-away hearing. Father's new counsel, who had not participated in the agreement to use a custody evaluator or the selection of Seeley, lodged the objections.

After an evidentiary hearing, the court issued a statement of decision indicating it had considered all of the factors outlined in *LaMusga*, *supra*, 32 Cal.4th 1072. The court concluded it was in E.C.'s best interest to move to Minnesota with Mother. The trial court's findings and order after hearing reflected the same conclusion.[2]

Father timely appealed.

## II. DISCUSSION[3]

Father argues the child custody evaluation was not conducted in compliance with legal requirements and therefore Family Code section 3111 prohibited the consideration or admission of the evaluation and the evaluator's testimony. Father contends the evaluation process and report violated California Rules of Court, rules 5.225 and 5.230 in approximately 80 instances.[4] However, Father focuses on three specific areas, arguing: (1) the child custody evaluation was conducted without specifying its purpose and scope; (2) Seeley failed to define the written procedures governing the evaluation, which allowed her report to improperly consider and weigh hearsay evidence of Mother's

---

[2] The trial court later entered judgment of dissolution on August 2, 2023, in accordance with the parties' marital settlement agreement. The court reserved "[i]ssues of child support and custody/visitation."

[3] Mother moves to strike Father's opening brief, arguing it includes facts that "occurred long after the date of the orders from which [Father] appeals." In response, Father relies on Code of Civil Procedure section 909, which allows a reviewing court to make "factual determinations contrary to or in addition to those made by the trial court" where "trial by jury is not a matter of right or where trial by jury has been waived." (Code Civ. Proc., § 909.) This includes the ability to "take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal." (*Ibid*.) But this ability is not "intended to transform reviewing courts into trial courts [citations] and the power granted is to be exercised sparingly." (*De Angeles v. Roos Bros., Inc.* (1966) 244 Cal.App.2d 434, 443 [discussing former Code of Civil Procedure section 956a, which was substantively identical to section 909].) We grant the motion to strike in part, as to facts raised by Father that occurred after the time of the move-away hearing and were therefore not before the trial court. To the extent Father asserts Mother moved to North Dakota instead of Minnesota and he believes she did not comply with the move-away order, he is free to address that contention in the trial court.

[4] Subsequent unspecified rule references are to the California Rules of Court.

domestic violence allegations; (3) Seeley refused to provide her case file to Father or his counsel prior to the evidentiary hearing, prejudicing Father's ability to address the custody evaluator's opinions and recommendations, prepare to examine her, or review the issues.[5]

## A.    *Legal Principles and Standard of Review*

"California's statutory scheme governing child custody and visitation determinations is set forth in the Family Code . . . .  Under this scheme, 'the overarching concern is the best interest of the child.'  [Citation.]" (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955.)  Under Family Code section 3040, subdivision (e), the trial court has "the widest discretion to choose a parenting plan that is in the best interest of the child" when making initial long-term custody orders.[6] (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31 (*Burgess*).)  To determine a child's best interest, the court must consider several factors, including "[t]he health, safety, and welfare of the child," a history of abuse by one parent against a related child or the other parent, and "[t]he nature and amount of contact with both parents," as well as "any other factors it finds relevant . . . ." (Fam. Code, § 3011, subd. (a); *Burgess*, at p. 32.)

In making an order granting custody to either parent, the court must also consider "which parent is more likely to allow the child frequent and continuing contact with the noncustodial parent." (Fam. Code, § 3040, subd. (a)(1).)  The task for the trial court becomes more difficult when one parent seeks to relocate the child to a distant location.

---

[5] It is not clear how Father reached the conclusion the evaluator and custody evaluation report failed to comply with "80 parts and subparts" of the aforementioned rules.  It appears he may have simply counted up parts of rules 5.225 and 5.230 and now contends there was no compliance with any of them.  (See Opening Brief, p. 21 ["***There are approximately 80 parts and subparts of CRC, Rules 5.225 and 5.230 for which there was no compliance in this case.***"].)

[6] The previous custody arrangement was reflected in a Stipulation and Order filed by the parents.  The record does not reflect a permanent order was in effect at the time of the move-away hearing.  (See *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 258.)

(*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 362.) "A custody decision allowing one parent to move the children out of the state necessarily interferes with the other parent's ability to have frequent and continuing contact with them" and " 'is one of the most serious decisions a family law court is required to make.' " (*Seagondollar*, *supra*, 139 Cal.App.4th at p. 1119.)

"The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test. [Citation.] The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child. We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked. [Citation.]" (*Burgess*, *supra*, 13 Cal.4th at p. 32.) This deferential standard of review applies to move-away orders. (*In re Marriage of Edlund* (1998) 66 Cal.App.4th 1454, 1466.)

**B.**     ***Purpose and Scope of the Child Custody Evaluation***

"In a contested proceeding involving child custody or visitation rights, the court may appoint a child custody evaluator to conduct a child custody evaluation in cases where the court determines it is in the best interest of the child." (Fam. Code, § 3111, subd. (a).) "A child custody evaluation, investigation, or assessment, and a resulting report, may be considered by the court only if it is conducted in accordance with the requirements set forth in the standards adopted by the Judicial Council pursuant to [Family Code] Section 3117; however, this does not preclude the consideration of a child custody evaluation report that contains nonsubstantive or inconsequential errors or both." (*Ibid.*)

The Rules of Court require the use of form FL-327 – *Order Appointing Child Custody Evaluator* – for the appointment of a private child custody evaluator. (Rule 5.225(k)(2).) Father argues the trial court failed to issue mandatory form FL-327 which would have defined the purpose and scope of the underlying child custody evaluation upon which the move-away order would be based. In a related argument, Father also

6

asserts Seeley failed to file a declaration using mandatory forms FL-325 and FL-326 to show whether Seeley met all licensing, education, and training requirements as a custody evaluator.

We agree that by failing to use the forms established in the Rules of Court, the trial court erred. "Forms adopted by the Judicial Council for mandatory use . . . must be used by all parties and must be accepted for filing by all courts." (Rule 1.31; see also *In re Marriage of Sharples* (2014) 223 Cal.App.4th 160, 166 ["[m]andatory judicial forms '*must* be used by all parties' "].) We emphasize that where an applicable mandatory form exists, neither the parties nor the trial court may decline to use them. The forms were adopted to standardize the process of the custody evaluator appointment, to assist the court and counsel to engage in a thoughtful consideration of the scope of the evaluator's role in custody disputes, and to ensure only a qualified evaluator renders an opinion on a custody plan. These steps promote the goal that the trial court and the parents receive a well-informed opinion most likely to result in an order in the child's best interests, consistent with Family Code section 3040 and as described in *Burgess*.

However, the error here does not compel reversal of the order. "No judgment shall be set aside . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) On these facts, we conclude the failure to use these forms for the appointment of the evaluator was harmless error. We conclude no miscarriage of justice occurred here, where the parties, represented by counsel, stipulated to a custody evaluation with this specific evaluator, later deemed to be well qualified by the trial court.

We also conclude the parties' agreement to use Seeley for the evaluation renders the use of her report in the move-away hearing harmless. Family Code section 3111 awards the trial court discretion to consider such a report where it contains only "nonsubstantive or inconsequential" errors. (Fam. Code, § 3111, subd. (a).) Because the

parties stipulated to Seeley's appointment, we see no basis for concluding the failure to use the required forms resulted in any substantive or consequential error.

With regard to Father's assertion concerning the failure to use the mandatory form to define the scope and purpose of the evaluation, the record does not demonstrate prejudice. The trial court found in its statement of decision: "The scope of this Evaluation was clearly defined. Both parties and their attorneys, Ms. Seeley, and the Court understood the scope of the Evaluation from the day the parties stipulated to it. No deficiency with respect to assignment of Ms. Seeley prejudiced either party and any impact was shared equally by the parties. Both parties were well represented by experienced counsel who were well aware that Ms. Seeley's Evaluation was a Move-away Evaluation with [Father] staying in California and [Mother] moving."

The record supports the trial court's assessment. Mother requested a move-away evaluation and for the trial court to allow the move to Minnesota. In Father's "Responsive Declaration to Request for Order," he stated "he agrees that a complete move away evaluation is appropriate and necessary for the Court to determine what is in the child's best interest prior to making a decision regarding Mother's request to move their child out of state. Thus, Mother's request for a move away evaluation should be granted."

Father cites *Seagondollar, supra,* 139 Cal.App.4th 1116 for the proposition that the volume of errors by the trial court resulted in Father being denied a fair hearing. In that case, on a review of the trial court's post-judgment order modifying the joint physical and custody arrangement to give mother sole legal and physical custody and allowing her to move out of state, the appellate court reversed "because the trial court deprived [father] of an opportunity to be meaningfully heard before granting [mother's] 'move-away' request." (*Id.* at p. 1119.) The court concluded "the trial court erred by (1) failing to require [mother] to file a responsive pleading to his March OSC or to file a counter-OSC requesting custody and a move-away; (2) granting [mother's] request to

8

hear her October OSC on shortened notice without good cause; (3) refusing to hear [father's] motion to quash before the hearing on [mother's] October OSC; (4) refusing to trail or continue the matter for three days to permit [father's] rebuttal expert to testify; and (5) failing to issue an order defining in detail the purpose and scope of the Evidence Code section 730 evaluation." (*Seagondollar*, at p. 1127.) The appellate court agreed with father that "[t]he trial court erred in all of those ways. While some error may be excused as harmless, the cumulative effect was to deny [father] a fair hearing." (*Ibid*.)

We are not persuaded that the errors in this custody proceeding are similar to those in *Seagondollar*. There the trial court's errors denied father notice that he was contesting a move-away request, notice of mother's contentions and evidence in support of the proposed move, the opportunity to be heard by preparing to refute mother's expert, and the opportunity to present his case by denial of a brief continuance to call his rebuttal expert as a witness. These amounted to the denial of the right to be meaningfully heard at the hearing on the proposed move-away order. But here, although the trial court erred by failing to use or require the use of mandatory forms, we perceive no prejudice from the error. The parties stipulated to the expert. Father was aware that the scope of the custody evaluation was Mother's move-away request. The court provided the parties with the opportunity to contest the matter in a robust evidentiary hearing at which Father challenged the evaluator with his own expert.

Accordingly, although we determine the trial court erred by failing to use the forms required by the Rules of Court, we conclude Father was not prejudiced by the trial court's failure to use the mandatory forms appointing the custody evaluator, and the court did not err by denying Father's motion to exclude the custody evaluator's testimony and report.

## C. *Written Procedures of the Evaluation*

The Rules of Court define a "child custody evaluation" as "an expert investigation and analysis of the health, safety, welfare, and best interest of children with regard to

9

disputed custody and visitation issues." (Rule 5.220(c)(3).) An evaluation must include, among other things, "[d]ata collection and analysis . . . allow[ing] the evaluator to observe and consider each party in comparable ways and to substantiate (from multiple sources when possible) interpretations and conclusions regarding each child's developmental needs; the quality of attachment to each parent and that parent's social environment; and reactions to the separation, divorce, or parental conflict." (Rule 5.220(e)(2).)

Father relies on the testimony of his expert, Dr. William Austin, to argue Seeley did not mention any social science literature or social science information relevant to her analysis and supporting her opinions. Dr. Austin also opined the evaluation and report were biased on the issue of emotional abuse and framed the marital disagreements and conflicts as intimate partner violence (IPV). Father contends the report exhibited bias against him without evidentiary basis or corroboration. Father argues this demonstrates Seeley did not utilize procedural safeguards necessary to eliminate bias, and this was consequential because the trial court relied heavily on Seeley's report.

Aside from relying on his expert's opinion, Father provides little explanation to support his assertion that Seeley was biased. He points to the trial judge's comment in which the judge stated she was "well aware of [Seeley's] credentials and [] expertise," from the time Seeley was director of Family Court Services, but simply being aware that Seeley was well qualified does not mean the trial court was biased toward her.

To the extent Seeley's and Austin's opinions conflicted, in that battle of the experts the trial court was entitled to reach its own conclusions based on the experts' opinions. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 ["Weighing evidence, assessing credibility, and resolving conflicts in evidence and in the inferences to be drawn from evidence are the domain of the trial court, not the reviewing court. Evidence from a single witness, even a party, can be sufficient to support the trial court's findings. [Citations.]"]; see also *Ohmer v. Superior Court* (1983) 148 Cal.App.3d 661, 669-670

10

[noting that waiver by the parties of the right to call a custody investigator as a witness, or to cross-examine, can help avoid a "battle of the experts"].)

Father's belief that information may have been missing from the custody report does not mean the report was wholly inadmissible. "An opinion not founded on all of the facts goes to the weight of the evidence and not to its competency or materiality. [Citation.]" (*Alward v. Paola* (1947) 79 Cal.App.2d 1, 9.) Father's arguments do not demonstrate any particular error by the trial court; instead they focus on his dissatisfaction with Seeley's opinions and with the trial court's findings based on the record. We perceive no error in the admission of the expert's report on this basis.

**D.    *Seeley's Case File***

Father argues neither Seeley nor Mother provided him with Seeley's case file in advance of the hearing. He contends this significantly prejudiced his ability to address Seeley's opinions and recommendations. Father asserts that prior to the move-away hearing, Mother's counsel objected to Father's request for Seeley's file on the basis that discovery was closed, but this was incorrect because (1) a client receiving their file from a jointly-retained professional is not discovery and (2) the hearing was an evidentiary hearing, not the final trial on all issues, so discovery was not closed.

As to the first point, Father provides no support for the proposition that he was automatically entitled to Seeley's file as her client. "When an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited. [Citation.]" (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066.) Further, Seeley emailed Father and Mother at the beginning with an evaluation packet to complete. In the included "Custody Evaluation Costs and Procedures" document from the Santa Cruz Superior Court, it stated "[a]ll subpoenas must go directly to the private evaluator and not to the court." Additionally, although the Rules of Court provide a child custody evaluation report created by a court-appointed evaluator must be served on the parties or their attorneys, it does not require the same for

11

any additional documents of the evaluator, such as the evaluator's case file. (See rule 5.220(g).) There is no apparent basis to conclude a subpoena would not be needed in this instance to obtain records from Seeley, a third party.

Further, we need not reach the issue of whether the discovery cutoff had in fact passed because the close of discovery would only have an impact on formal requests for discovery or motions to compel discovery. Neither are implicated here. Although Father asked for Seeley's case file, he did not make any formal request under the Civil Discovery Act (Code Civ. Proc., § 2016.010 et seq.) such as by serving a subpoena requesting Seeley's records.[7] Likewise, although Father filed an ex parte request seeking to continue the date of the hearing and depose Seeley, he did not notice her deposition or serve her with a subpoena.[8] No motion to enforce any subpoena was filed with the trial court. Because Father did not employ an authorized method of obtaining discovery under the Civil Discovery Act in his attempts to obtain Seeley's file or depose her, whether the trial court considered discovery closed as of any particular date is irrelevant and had no impact on the proceedings.

E.      *Hearsay in Seeley's Report and Testimony*

Father argues Seeley's report and testimony included inadmissible case-specific hearsay. In support of this point, he cites *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*). In *Sanchez*, the California Supreme Court clarified when an expert may rely on hearsay, and whether such hearsay can be related to a jury. The Court stated "[a]ny

---

[7] Father's attorneys stated in an email to Seeley that they could "provide a subpoena if you need that for your records," but there is no indication they ever actually served such a subpoena. Seeley stated in an earlier email to Father's attorneys that a request for records required both parties' consent and she had only provided such documents "with a subpoena of records in the past."

[8] The trial court granted a 30-day continuance of the hearing, but stated "[t]he request to re-open discovery is denied." Among other things, the court noted the substitution of Father's counsel less than 30 days from the start of the evidentiary hearing did not constitute good cause to allow expert discovery.

expert may still *rely* on hearsay in forming an opinion, and may tell the jury *in general terms* that he did so," but "*cannot* . . . relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Id*. at pp. 685-686.) Consequently, testimony relating " '*case-specific* facts about which the expert has no independent knowledge,' . . . unlike testimony about non-case-specific background information, is subject to exclusion on hearsay grounds." (*People v. Veamatahau* (2020) 9 Cal.5th 16, 26.) We note that "[a]lthough *Sanchez* is a criminal case, it also applies to civil cases . . . to the extent it addresses the admissibility of expert testimony." (*People v. Bona* (2017) 15 Cal.App.5th 511, 520; see also *In re Marriage of Lietz* (2024) 99 Cal.App.5th 664, 673 ["the *Sanchez* rule concerning state evidentiary rules for expert testimony applies in civil cases"].)

Father points to various statements in the custody evaluation report from individuals who did not testify at the hearing that he contends are case-specific hearsay. At the hearing, the trial court acknowledged Father's hearsay objection, but stated, because ultimately the court had the final say in deciding what would be in E.C.'s best interest after considering the required factors, objections concerning case-specific hearsay would just "go to the weight." The court continued: "Say, for example, Ms. Seeley's conclusions concerning whether or not there was domestic violence in their relationship. I'm not going to admit that for the truth that – that there was domestic violence in the relationship." The court stated further that it would allow Father's counsel to cross-examine Seeley regarding any case-specific hearsay, "[a]nd you can call those out to the Court, and it would go to the weight of her opinion and conclusions as to that factor under the *LaMusga* factors that are set forth as opposed to the admissibility and exclusion of her testimony."

While a more careful delineation by the trial court of what portions of the report constituted hearsay would have been useful, we note the trial court indicated it would not consider certain case-specific hearsay. Of more significance, the trial court's application

of the *La Musga* factors, which we discuss below, included ample reasons that support the court's decision, separate from any case-specific hearsay. Consequently, to the extent the trial court may have considered any hearsay in its decision, it was harmless.

**F.** **_LaMusga Factors_**

Separate from the purported procedural errors, Father argues the trial court abused its discretion by granting Mother's move-away request. He contends the factors the court was required to consider weighed heavily in favor of E.C. residing primarily with Father if Mother moved to Minnesota. He asserts no move-away cases have been granted on facts similar to this case.

The factors to be considered by the trial court when considering a parent's request to move with a child were set forth by the California Supreme Court in *LaMusga*, *supra*, 32 Cal.4th 1072. "Among the factors that the court ordinarily should consider when deciding whether to modify a custody order in light of the custodial parent's proposal to change the residence of the child are the following: the children's interest in stability and continuity in the custodial arrangement; the distance of the move; the age of the children; the children's relationship with both parents; the relationship between the parents including, but not limited to, their ability to communicate and cooperate effectively and their willingness to put the interests of the children above their individual interests; the wishes of the children if they are mature enough for such an inquiry to be appropriate; the reasons for the proposed move; and the extent to which the parents currently are sharing custody." (*Id.* at p. 1101.)

The trial court stated in its statement of decision it had considered all of the *LaMusga* factors to arrive at its decision regarding E.C.'s best interest, including making findings of fact regarding each factor. The court addressed the interest in maintaining stability and continuity for E.C., finding E.C.'s parents are her "most valuable social capital, as are her paternal and maternal grandparents and extended family." The court acknowledged E.C. would "lose some continuity and stability whether she goes with

14

mom or stays with dad, but the more stable parenting plan for [E.C.] is when she goes with [m]om." The court noted although the proposed move was to a long distance, the difficulty of the travel would be mitigated by Mother's willingness to share travel costs and drive to Minneapolis to shorten Father's travel time, and also by the types of employment of the parents and the flexibility of their schedules. The court observed, as E.C. was only four years old, she did not yet have "the social network and extracurricular activity schedule she is likely to have when she gets older." Further, because of E.C.'s young age, she was "too young to be consulted regarding the move-away." With regard to E.C.'s relationship with her parents, the court found E.C. "is bonded with both parents. Both parents are excellent parents and are doing a good job raising their daughter."

As for the relationship between the parents, the court found "Mother is not placing her needs above the child's by moving," "Mother's testimony regarding having a plan for [E.C.] to develop deep, lasting relationships in her new home is credible," and the facts "indicate she is likely to be a good gatekeeper." In contrast, the court found Seeley's "observations that Father has a tendency to be overly critical of Mother; Father over-shares his emotions with [E.C.]; and Father's secret-keeping with [E.C.], are persuasive." The court considered the reasons for Mother's move, finding that "Mother is moving for the legitimate purpose of accessing a support network for which she has heightened need as a person with a cancer diagnosis," and that "Mother will have support of her family and long-time friends in an environment in which she lived for fourteen years."

Father claims (1) it was in E.C.'s best interest based on stability and continuity, to remain in Santa Cruz, California, with Father; (2) the distance of the move makes it impossible for the parties to maintain substantial or joint physical custody; (3) E.C.'s young age weighed against the move; (4) E.C.'s relationship with her parents weighed in favor of staying in California; (5) Father and Mother's history of animosity weighed against the move; (6) Mother's reasons for moving based on health and family demonstrate why the move was in her best interest, not E.C.'s; and (7) the parties'

15

previous agreement to share equal parenting time post-separation weighed in favor of E.C. remaining in California.

"When examining a child custody determination, our review is limited to determining whether the trial court abused its discretion. [Citation.] We will find no abuse of discretion if substantial evidence shows that the 'court could have reasonably concluded' that granting [Mother's] move-away request 'advanced the "best interest" ' of [the child]." (*Ramsden v. Peterson* (2022) 76 Cal.App.5th 339, 345.) The trial court here did not err because it applied the correct legal standard and considered the *LaMusga* factors to determine what was in E.C.'s best interest. The trial court set forth the reasons for its decision based on evidence and directly tied the evidence to the factors.

We recognize the serious impact the change of custody order means to Father and, indeed, to E.C. The trial court did as well: "[E.C.] will lose some continuity and stability whether she goes with mom or stays with dad." Even with the grant of extensive time for Father with E.C. in the summer, the order represents a significant interference with his previous continuous and regular contact with the child. Custody cases involving a parent's request to relocate with a child are painful. But we are compelled by the standard of review to conclude the trial court did not abuse its discretion as there was a "reasonable basis on which the court could conclude its decision advanced the best interests of the child. [Citation.]" (*Jacob A. v. C.H.* (2011) 196 Cal.App.4th 1591, 1599.) We therefore affirm the trial court's decision in this case.

### III.    DISPOSITION

The trial court's May 2, 2023, statement of decision and May 16, 2023, findings and order after hearing are affirmed. Each party shall bear its costs on appeal in the interests of justice. (Rule 8.278(a)(5).)

16

_____
Greenwood, P. J.


WE CONCUR:




_____
Grover, J.




_____
Danner, J.




H051112
In re the Marriage of SARAH CHEN and JORGE CHEN